[No. F013296. Fifth Dist. Apr. 8, 1991.]

In re STEVEN O., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
STEVEN O., Defendant and Appellant.

48

COUNSEL

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael J. Weinberger and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THAXTER, J.**—This appeal from an order committing Steven O. to the California Youth Authority raises several interesting issues. We initially hold that a juvenile court referee is disqualified from hearing a supplemental petition alleging violation of probation terms in an earlier order resulting from a petition prosecuted by the referee in his previous role as a deputy district attorney. Because Steven failed to assert the ground of disqualification at the earliest possible opportunity, however, we will conclude he waived it. Next, we hold that the petition leading to the order under review did not notify Steven that his confinement time remaining from his earlier juvenile court orders might be aggregated with that imposed for the offense alleged in the current petition, as required by *In re Michael B.* (1980) 28 Cal.3d 548 [169 Cal.Rptr. 723, 620 P.2d 173], but Steven was not prejudiced by the defect. Finally, we hold that the court was not precluded from vacating its immediately preceding dispositional order and modifying an earlier disposition order under Welfare and Institutions Code[1] section 777. On this last issue we decline to follow *In re Scott K.* (1984) 156 Cal.App.3d 273 [203 Cal.Rptr. 268].

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

## SUMMARY OF FACTS AND PROCEEDINGS BELOW

On August 4, 1988, the Kern County District Attorney filed a petition in the juvenile court pursuant to section 602 alleging that Steven O. had violated Health and Safety Code section 11351.5 by possessing cocaine base for sale. The petition was assigned number 66086. A contested jurisdictional hearing was held on September 8. The People were represented by Deputy District Attorney Peter Warmerdam. Steven was found to have violated Health and Safety Code section 11350, a lesser included offense of Health and Safety Code section 11351.5. At a dispositional hearing on September 23, 1988, Steven was adjudged a ward of the court, was granted probation not to exceed five years, and was committed to Camp Erwin Owen. In addition, a restitution fund fine of $25 was imposed. Maximum confinement time for the offense was found to be three years, less sixteen days for time served.

On October 12, 1989, a probation officer filed a supplemental petition under the same case number pursuant to section 777, subdivision (a), alleging noncriminal violations of Steven's terms of probation.[2]

A jurisdictional hearing was held on the supplemental petition on October 13, 1989, before Referee Peter Warmerdam, who had, as deputy district attorney, represented the People at the contested jurisdictional hearing of September 8, 1988. Steven waived his right to a contested hearing and admitted the allegations of the supplemental petition. At the dispositional hearing, Referee Warmerdam adjudged Steven to be a ward of the court, directed that he remain in juvenile hall and that he spend 60 days in the Juvenile Hall Work Program as a term of his probation. The deadline for payment of the previously imposed restitution fine was continued to March 1, 1990.

On November 1, 1989, a second supplementary petition was filed under this case number, citing both sections 602 and 777, subdivision (a), and alleging that on September 25, 1989, Steven committed a felony and two misdemeanors (Pen. Code, §§ 245, subd. (a)(2), 417, subd. (a)(2), 594, subd. (b)(4)). A fourth count alleged that the Penal Code violations constituted a violation of probation under section 777, subdivision (a).

A contested jurisdictional hearing was held before Referee Warmerdam, sitting by stipulation as judge pro tempore, on December 1, 1989. The court found Steven had violated Penal Code section 417, subdivision (a)(2) and had thus violated his probation. The other two allegations were found not

---

[2]The petition alleged that Steven failed to report to the probation officer as directed, failed to report a change of address, failed to obey his parents and keep them informed of his whereabouts, and failed to pay the restitution fine as ordered.

true. Confinement time on the single Penal Code violation found true at the hearing was stated to be six months.

At the December 15 dispositional hearing, Referee Warmerdam found the available confinement time was three years and two months, less time served. He further found, inter alia, that "previous orders have not been effective in [Steven's] rehabilitation, that local programs would be ineffective in his rehabilitation." He ordered the uncompleted juvenile hall commitment set aside and committed Steven to the California Youth Authority for "consecutive periods of confinement time on the petitions filed August 4th, 1988, and supplemental petitions filed October 12th, 1989, and November 1st, 1989." The restitution fund fine dating from the original dispositional hearing was set aside.

## DISCUSSION

I. *Was the Judge Pro Tempore Disqualified From Hearing This Matter?*

Code of Civil Procedure section 170.1, subdivision (a) provides in pertinent part:

"(a) A judge shall be disqualified if any one or more of the following is true:

". . . . . . . . . . . . . . . . . . . . .

"(2) The judge served as a lawyer in the proceeding, or in any other proceeding involving the same issues he or she served as a lawyer for any party in the present proceeding or gave advice to any party in the present proceeding upon any matter involved in the action or proceeding.

"A judge shall be deemed to have served as a lawyer in the proceeding if within the past two years:

"(A) A party to the proceeding or an officer, director, or trustee of a party was a client of the judge when the judge was in the private practice of law or a client of a lawyer with whom the judge was associated in the private practice of law; or

"(B) A lawyer in the proceeding was associated in the private practice of law with the judge.

"A judge who served as a lawyer for or officer of a public agency which is a party to the proceeding shall be deemed to have served as a lawyer in the proceeding if he or she personally advised or in any way represented the public agency concerning the factual or legal issues in the proceeding."

█ Code of Civil Procedure section 170.1 applies in juvenile cases. (See *In re Richard W.* (1979) 91 Cal.App.3d 960 [155 Cal.Rptr. 11], interpreting former Code Civ. Proc., § 170.)

█ In the proceedings below, Referee Peter Warmerdam served as judge pro tempore on a supplemental petition under section 777, subdivision (a) alleging a violation of probation. The condition of probation was imposed in an order resulting from a petition on which Referee Warmerdam, then a prosecutor, represented the petitioner.

One case, decided under former Code of Civil Procedure section 170, is quite similar factually to this scenario. In *People* v. *Crappa* (1925) 73 Cal.App. 260 [238 P. 731], the prosecutor who appeared for the People at Crappa's arraignment (when Crappa pleaded guilty) and at sentencing (when Crappa was granted probation) was later the judge who presided over Crappa's probation revocation hearing. Crappa appealed, arguing that the judge was disqualified for having represented the plaintiff in the same case. The appellate court agreed and reversed.

Although Steven cites *Crappa* in his opening brief, respondent fails to address it. Instead, respondent generally distinguishes cases interpreting Code of Civil Procedure section 170, pointing out that the language of Code of Civil Procedure section 170.1 differs in significant ways from that of former Code of Civil Procedure section 170. Respondent goes on to argue that the order under review was not made in the same proceeding as the earlier order notwithstanding the identity of case numbers and the ongoing nature of juvenile proceedings, stating:

"In the instant case, it cannot be said that Judge Warmerdam served as a lawyer in the *current* proceeding simply because he prosecuted appellant 14 months before. The two proceedings are separate, having different charging documents, the full panoply of constitutional rights attaching to each proceeding, and the closure of disposition in each case."

We disagree with respondent. *Crappa* does apply. The juvenile court law's provision for a separate petition for a probation violation does not change the nature of the proceeding. It remains a probation revocation hearing. *Crappa* clearly holds that the attorney who prosecutes may not later sit in a postsentence probation revocation hearing as judge when the

probation order resulted from the judge's former role as prosecutor. (73 Cal.App. at p. 261.)

Just because *Crappa* was decided under former Code of Civil Procedure section 170 does not make it inapplicable here. What the *Crappa* court held is that the attorney/judge there was barred from sitting " '. . . in any action or proceeding, . . . when in the action or proceeding, or in any previous action or proceeding involving any of the same issues, he has been attorney or counsel for either party.' (Code Civ. Proc., [former] sec. 170.) This provision is too plain to admit of controversy, and the disqualification of the trial judge is clear." (73 Cal.App. at p. 261.)

Thus, the disqualifying factors relied on in *Crappa* were that either the probation hearing was the same proceeding as the prior arraignment and sentencing, or that they were separate proceedings involving the same issues. Both of these disqualifying factors remain in effect under Code of Civil Procedure section 170.1 and bar Referee Warmerdam from hearing Steven's case.

## II.   *Was the Disqualification Issue Waived?*

Code of Civil Procedure section 170.3, subdivision (c)(1) provides that when a judge fails to disqualify himself, a party may file a verified statement objecting to the judge and setting out the basis for disqualification. This statement "shall be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification."

Under former Code of Civil Procedure section 170, several cases stated that a disqualifying circumstance *must* be raised no later than the time the matter is submitted for judgment. (See, e.g., *Baker* v. *Civil Service Com.* (1975) 52 Cal.App.3d 590, 594 [125 Cal.Rptr. 162]; *People* v. *Tappan* (1968) 266 Cal.App.2d 812, 817 [72 Cal.Rptr. 585]; *In re Cavanaugh* (1965) 234 Cal.App.2d 316, 321 [44 Cal.Rptr. 422]; *Rohr* v. *Johnson* (1944) 65 Cal.App.2d 208, 212 [150 P.2d 5].) However, former Code of Civil Procedure section 170 included express language even more limiting than the cases interpreting the statute: an objection "shall be presented at the earliest practicable opportunity, . . . and in any event *before the commencement of the hearing of any issue of fact* . . . ." (Former Code Civ. Proc., § 170, subd. (c), italics added.) Such language is noticeably absent from the new statute, Code of Civil Procedure section 170.1.

■   Appellant contends he cannot be barred from raising the issue for the first time on appeal as he did not know (or could not be held responsible for knowing) the facts constituting a basis for disqualification until after

termination of lower court proceedings. He further contends that questions of law based on facts appearing on the face of the record may be raised for the first time on appeal, and suggests that the judgment below is "null and void under section 170.1." Finally, he contends that the "waiver provisions" of section 170.3 all assume knowledge of the grounds of disqualification, and that it is unfair to apply them when the grounds were known only to the judge until after lower court proceedings had terminated.

First, the judgment below was not "null and void" as appellant characterizes it but is simply voidable. "[I]t is clear that the right to urge the disqualification of a judge for most causes under section 170 and peremptorily under section 170.6 may be waived by the parties. [Citations.] Consequently, the actions of a disqualified judge are not void in any fundamental sense but at most voidable if properly raised by an interested party." (*In re Christian J.* (1984) 155 Cal.App.3d 276, 280 [202 Cal.Rptr. 54].)

It is also clear that one manner in which a party may waive a judge's disqualification is by failing to raise the issue promptly. "The statement [of disqualification] shall be presented at the *earliest practicable opportunity after discovery of the facts* constituting the ground for disqualification." (Code Civ. Proc., § 170.3, subd. (c)(1), italics added.) Failure to comply with this requirement constitutes an implied waiver of the disqualification. (*Sacramento etc. Drainage Dist.* v. *Jarvis* (1959) 51 Cal.2d 799, 801 [336 P.2d 530]; *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 386, 390-392 [139 P.2d 930].) The matter cannot then be raised for the first time on appeal. (*People* v. *Beaumaster* (1971) 17 Cal.App.3d 996, 1009 [95 Cal.Rptr. 360].)

Appellant argues repeatedly that there was no opportunity to raise this issue below. "The only person who knew of the legal grounds for disqualification was Judge Warmerdam himself . . . ." "[T]he grounds for the objection were not known until a careful review of the record on appeal was made." "In this case, the 'earliest practicable opportunity' was on appeal when the entire record was before appellate counsel." "[A]ppellant had no prior knowledge, and was not 'sitting' on the objection." "In this case, [] discovery was not made until appeal." "[Appellant] had no knowledge of the disqualification, . . ."

All of these statements, however, are factual assertions unsupported by the record. Insofar as the record shows anything, it indicates Steven was personally present at both the jurisdictional hearing on the original petitions, at which then-Attorney Warmerdam appeared as prosecutor, and at the jurisdictional and dispositional hearings on the supplemental petitions, at which Referee Warmerdam presided as judge pro tempore. In addition,

Steven's counsel on the supplemental petitions was on notice of the prior proceedings and presumably had access to records which would reveal Referee Warmerdam's involvement with the original petition.

If Steven or his attorney were aware at the time of the supplementary proceedings of Referee Warmerdam's prior activity in the case, they failed to file a verified statement at the "earliest practicable opportunity after discovery of the facts constituting the ground for disqualification" as required by Code of Civil Procedure section 170.3, subdivision (c)(1). This promptness requirement is not to be taken lightly, especially when the party delays in challenging the judge until after judgment. Otherwise, a defendant can sit through a first trial hoping for an acquittal, secure in the knowledge that he can invalidate the trial later if it does not net a favorable result. (See, e.g., *Woolley* v. *Superior Court* (1937) 19 Cal.App.2d 611, 619 [66 P.2d 680].)

We, of course, cannot resolve any factual questions raised by Steven's appellate counsel. The proper forum for presentation and resolution of such questions is the lower court. On this record we can only conclude Steven failed to comply with Code of Civil Procedure section 170.3, subdivision (c)(1). Accordingly, Steven's challenge to Referee Warmerdam, first raised on appeal, is untimely.

III. *Did the Supplemental Petition of November 1, 1989, Give Steven Adequate Notice of the Possibility of Aggregated Maximum Confinement Time?*

In *In re Michael B., supra,* 28 Cal.3d 548, the Supreme Court held that a minor previously adjudicated a ward of the court under section 602, who thereafter violates a criminal statute, may be charged either by way of a supplemental petition under section 777 or by a new section 602 petition. (*Id.* at p. 553.) The court held, however, that "where the prior offenses are to be considered to aggregate the maximum term to extend it beyond that which could be imposed for the new offense, due process requires notice of the juvenile court's intention in order to provide the minor with a meaningful opportunity to rebut any derogatory material within its prior record." (*Ibid.*) "Thus, we conclude [] [that a petition under section 602 must contain notice of the intent to rely upon previous sustained petitions under section 602, in order to aggregate the maximum period of confinement on the basis of those petitions]." (*Id.* at p. 554; see also *In re Donnell L.* (1989) 212 Cal.App.3d 185, 192 [260 Cal.Rptr. 396].)

The *Michael B.* court went on to explain that it is unnecessary to file separate petitions under sections 602 and 777 if the intent is both to allege a

new offense and a probation violation arising from that offense. "So long as the minor is given the requisite *notice* of the intent to rely upon the minor's prior offense or offenses or upon the ineffectiveness of prior dispositions in order to enhance the maximum period of [Youth Authority] commitment for the current offense, the issues may be presented in a single unitary petition which contains the requisite allegations, and may be disposed of in the course of a single proceeding otherwise conforming to law." (28 Cal.3d at p. 554.)

Here, the petition cites both sections 602 and 777, subdivision (a) in its caption. Counts I to III allege criminal behavior, and count IV reads as follows:

"Said minor, was adjudged a Ward of the Juvenile Court under Section 602 and placed on Probation. The previous dispositions of the Court have not been effective in the rehabilitation of the minor, in that the minor is in violation of said probation by the commission of the offense/s alleged in this Petition; thereby placing said minor within the provisions of Section 777a [*sic*] of the Welfare and Institutions Code. The confinement time on the Petition(s) filed August 4, [1988] and October 12, 1989, is three years less credit for time served."

Thus, although the petition specified that Steven had a previous section 602 adjudication and set forth the confinement time resulting therefrom, it did not expressly state an intent to rely upon the earlier petition for aggregation of the maximum period of confinement time.

The *Michael B.* court did not prescribe any particular form for the required notice of intent to request aggregation. In two reported cases this court has indicated language which satisfies the requirement. In *In re Edwardo L.* (1989) 216 Cal.App.3d 470 [265 Cal.Rptr. 188], the petition notified the minor that " 'any previously sustained petition can be used by the Court in aggregating the total amount of time the minor can be removed from the custody of his parents.' " (*Id.* at p. 479.) The *Edwardo L.* court held that this notice satisfied the due process notice requirements of *Michael B.* In an earlier case, *In re Ronald W.* (1985) 175 Cal.App.3d 199 [220 Cal.Rptr. 557], we approvingly noted that in some counties the following language is used: " 'YOU ARE FURTHER NOTIFIED that prior sustained petitions entitle the court to use a total period of __, which may be added to the time in custody imposed on current charges.' " (*Id.* at p. 203, fn. 7. See also *In re Martin L.* (1986) 187 Cal.App.3d 534, 543 [232 Cal.Rptr. 43] ["the petition satisfied due process since it gave appellant notice of the maximum confinement time and the People's request to aggregate confinement time at disposition" (italics added)].)

The petition here falls short of providing the notice required by *Michael B.* Merely stating that the confinement time on the earlier petition was three years, less credit for time served, did not indicate an intent to request the court to aggregate that time with confinement time for the current offenses. Presumably, Steven already knew the confinement time from the original petition. What he did not know from the new petition was whether the district attorney's office would request the court to aggregate the time. A petition which requires the minor to guess at the district attorney's intentions does not satisfy *Michael B.*

Although the petition did not give Steven the required notice of intent to seek aggregation of confinement time, we do not see how Steven could have been prejudiced under the circumstances. Steven did not admit the petition under the impression that the maximum confinement time he was facing was that for the current offense. He denied the petition and it went to a fully contested jurisdictional hearing. Prior to the dispositional hearing on the second supplemental petition, the probation officer prepared a written report expressly recommending aggregation of the confinement time from the earlier petitions with that for the current offense. At the hearing neither Steven nor his counsel registered any objection to or surprise with this recommendation. The only argument they presented regarding disposition was that Steven should be committed to a local camp rather than the Youth Authority. We conclude that Steven and his counsel knew and understood the court's power and intention to aggregate time. The error in failing to include the notice in the supplemental petition was harmless beyond a reasonable doubt. (See *In re Donnell L., supra,* 212 Cal.App.3d at p. 192; and cf. *In re Stephen P.* (1983) 145 Cal.App.3d 123, 135-136 [193 Cal.Rptr. 263].)

IV. *Was the Finding That Previous Orders Had Not Been Effective in Rehabilitating Steven Unwarranted or Premature?*

In committing Steven to the Youth Authority, the court determined that "previous orders have not been effective in [the minor's] rehabilitation, that local programs would be ineffective in his rehabilitation." Such a finding was required before Steven's level of confinement could be increased under section 777, subdivision (a)(2), which directs that a supplemental petition alleging criminal conduct "contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor." (See also *In re Ronald W., supra,* 175 Cal.App.3d at p. 205.)

When he was committed to the Youth Authority, Steven had served 49 days of a 60-day juvenile hall commitment imposed on October 27, 1989.

That 60-day commitment was based on the *first* supplemental petition, filed on October 12 and alleging noncriminal probation violations. The court set aside that commitment in the December 15 order, based on the *second* supplemental petition, and sent Steven to the Youth Authority.

■ Steven maintains that because the October 27 commitment to juvenile hall was not fully executed, the court's finding that local programs had been ineffective was premature and unfounded.

Steven relies on *In re Scott K.*, *supra*, 156 Cal.App.3d 273. From 1980 to 1982 Scott K. was the subject of eight separate sustained petitions under sections 602 and 777. In April 1983 a new section 602 petition was brought alleging a burglary; Scott admitted the offense and the court ordered a 60-day commitment. Before that order was put into effect, a section 777 petition was filed seeking a change in the April order. At the hearing on the section 777 petition the court found that prior dispositions had been ineffective, based on Scott's 1980-1982 history. The juvenile court expressly acknowledged that the April 1983 order could not be the focus of a section 777 petition. Because of the newly admitted violations of the pre-April 1983 orders, the court modified Scott's commitment from 60 to 120 days.

The appellate court concluded that the juvenile court had erred in looking past the most recent dispositional order. "[A] section 777 petition may only determine whether the immediate past dispositional order has failed to effectively rehabilitate the minor and may not inquire into preceding dispositions." (156 Cal.App.3d at p. 276.) "[I]t is only after the minor has been given an opportunity to change behavior by following the court's latest orders that the court may use section 777 to intervene." (*Id.* at p. 278.)

There are two separate, not necessarily related, holdings in *Scott K.* The first is that a dispositional order may not be modified pursuant to a section 777 petition until the dispositional order has been "executed." The second is that in a section 777 proceeding the court may not examine any previous dispositional order save the last one. The sole authority cited and relied on by the *Scott K.* court (*In re William S.* (1970) 10 Cal.App.3d 944 [89 Cal.Rptr. 685]) may arguably support the first holding, but it clearly does not support the second.

In *William S.* the original petition was filed pursuant to section 601 alleging noncriminal conduct. After sustaining the petition, the court ordered the minor to a youth camp. Five days later, before the minor was transported to the camp, a section 777 petition was filed alleging that competent medical authority stated the minor would not adjust to the program and that the minor had announced his intention to run away from the

camp. The juvenile court found the supplemental petition true and committed the minor to the Youth Authority. On appeal the court referred to section 730 which then provided that a minor declared a ward pursuant to section 601 could thereafter be committed to the Youth Authority only pursuant to section 777. The *William S.* court opined that in such a case the required finding that the previous disposition was ineffective in rehabilitating the minor "should be predicated on misconduct of the minor constituting a criminal offense or failure to obey an order of the juvenile court." (10 Cal.App.3d at p. 951.) Since the supplemental petition in *William S.* did not allege criminal conduct or failure to obey the prior order, it could not support commitment to the Youth Authority.

The *William S.* court was clearly distinguishing between cases in which the original petition was filed under section 601 and those arising under section 602 because in the latter a commitment may be made to the Youth Authority in the first instance, unaffected by the version of section 730 then in effect.[3] Notwithstanding this distinction, the *Scott K.* court, although dealing with a section 602 petition, cited and relied only on *William S.*

Taken literally, the *Scott K.* rule that the latest dispositional order must be "executed" before the section 777 finding may be made could lead to some absurd results. For example, assume a section 602 ward is committed to a local camp program. Before being transported to the camp, the minor murders a fellow ward or counselor. Must the minor then be sent to camp and complete the commitment before the juvenile court can find that its prior dispositional order was ineffective in rehabilitation?

Neither *Scott K.* nor *William S.* clearly defines the term "executed" as used in the holdings of those cases. From the opinions it appears that in each case the minor had not begun serving the ordered commitment when the court made a new dispositional order. Here Steven had served 49 days of the 60-day juvenile hall commitment ordered on October 27 when the new order was made on December 15. Perhaps this factual distinction is sufficient basis for reaching a different result here. Nevertheless, although we have serious reservations about the first *Scott K.* holding, we need not decide here to follow or depart from it. It is the second *Scott K.* holding, limiting examination to the latest dispositional order, which is most clearly brought into question by the facts of this case. For reasons we will explain, we will respectfully decline to follow that holding. That conclusion disposes of the case.

---

[3] In 1976 the Legislature enacted legislation deinstitutionalizing section 601 wards. (See § 207; Note, *For Troubled Youth—Help, Not Jail* (1979) 31 Hastings L.J. 539.) The factual scenario of *In re William S., supra,* would not occur under current law.

First, we note that section 777 refers to "a previous order." When, as here, more than one dispositional order has preceded the section 777 petition, any of the prior orders falls within the statutory language. We find nothing in section 777 itself compelling the *Scott K.* court's conclusion that only the immediately preceding order may be examined.

In *Scott K.* the court stated that "Every appellate decision which has considered section 777 has focused on the immediate prior dispositional order in determining if a juvenile court has properly found rehabilitation ineffective." (156 Cal.App.3d at p. 277.) While that statement may be true, it proves nothing unless the cases to which the court was referring involved more than one previous dispositional order, or unless the juvenile court making the section 777 finding purported to modify an order other than the immediately preceding one. We cannot tell what cases the *Scott K.* court was referring to except for *In re William S., supra*, 10 Cal.App.3d 944. That case is clearly distinguishable because it involved only one previous dispositional order.

As far as we have been able to determine no other case, either before or after *Scott K.*, has held that a section 777 petition limits the juvenile court to reviewing the latest dispositional order.

The rationale behind the *Scott K.* court's holding was expressed in this way:

"Each time a ward comes before the court, whether the result of a subsequent section 602 or 777 petition, the goal of any resulting dispositional order is to rehabilitate the minor. Thus, a dispositional order should be all encompassing. This may simply require the juvenile court to adopt previous orders of the court or make wholesale changes, but once the court devises the latest rehabilitation plan, an attempt to carry it out must be made. Until the latest disposition has been executed, an evaluation of its effectiveness pursuant to section 777 cannot be made.

". . . . . . . . . . . . . . . . . . . .

"Section 777 . . . may not be utilized to modify an order the juvenile court has simply become unhappy about upon reflection. Rather, it is only after the minor has been given an opportunity to change behavior by following the court's latest orders that the court may use section 777 to intervene." (*In re Scott K., supra*, 156 Cal.App.3d at pp. 277-278.)

While the quoted statement has a certain facial appeal, on closer examination we cannot accept it. The facts of this case demonstrate why.

Whenever a juvenile court makes a dispositional order, it does so on the basis of the matters properly brought before it at that time. (§§ 706, 725; Cal. Rules of Court, rule 1495(d).) In this case the court, in fashioning the October 27 dispositional order, had before it only information concerning the original petition (possession of cocaine for sale) and the October 12, 1989, supplemental petition alleging noncriminal probation violations. The court's October 27 finding that the earlier order had not effectively rehabilitated the minor was based solely on the noncriminal probation violations. Although the incident leading to the later combined section 602/777 petition had already occurred, it had not been brought before the court and was not considered when the court ordered a 60-day juvenile hall commitment. Thus, the October 27 dispositional order was not and could not be "all encompassing" as the *Scott K.* court stated.

While we agree with the *Scott K.* court's statement that "[s]ection 777 . . . may not be utilized to modify an order the juvenile court has simply become unhappy about upon reflection" (156 Cal.App.3d at p. 278), we do not see how the court's holding is necessary to prevent such orders. By its very terms section 777 requires allegations of either criminal or noncriminal violations of probation conditions. Unless those allegations are found true, the court is unable to make the necessary findings for modification. If a particular court in a particular case abuses its discretion by modifying an order which it "has simply become unhappy about upon reflection," there may be a basis for reversal in that case. We do not see that as a reason, however, for adopting a general rule which precludes a court from modifying one order simply because another order, based on different proof, has intervened. Here, of course, there is no suggestion that the court simply became unhappy upon reflection about the October 27 order. Instead, when the court made its dispositional order on December 15 it had a complete picture of Steven's conduct, including criminal conduct much more serious than the noncriminal probation violations considered on October 27. The evidence showing that the first dispositional order had not effectively rehabilitated Steven was much stronger and of a different character, clearly justifying a different disposition.

The second supplemental petition, filed on November 1, 1989, expressly alleged that the "previous dispositions [*sic*] of the Court have not been effective in the rehabilitation of the minor" because of his criminal conduct on September 25. As of September 25, the court had made only one previous disposition, that of September 23, 1988. Unless the court is permitted to relate the offending conduct to the order in effect at the time of the conduct, the legislative purpose behind section 777 may be frustrated.

If we followed the *Scott K.* holding here, the criminal offense would apparently be "lost" as a basis for a section 777 petition. The court could

not modify the September 23, 1988, dispositional order because of the *Scott K.* rule; the criminal offense could not be a violation of the October 27 order because it occurred before that order was made. We think this is an illogical result not at all dictated by statutory language. Thus, we decline to follow *Scott K.*

We find no error in the court's order vacating the remaining juvenile hall commitment and committing Steven to the Youth Authority.

## DISPOSITION

The judgment is affirmed.

Stone (W. A.), Acting P. J., and Harris, J., concurred.

A petition for a rehearing was denied May 2, 1991, and appellant's petition for review by the Supreme Court was denied July 11, 1991.