[No. B120948. Second Dist., Div. Two. Mar. 3, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL V. BARRERA, Defendant and Appellant.

## COUNSEL

Tracy J. Dressner, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin and Victoria Bedrossian, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NOTT, J.**—Michael V. Barrera appeals from the judgment entered upon his conviction by jury of forgery of a check (Pen. Code, § 470, subd. (a)), with findings that he had suffered two prior serious felony convictions within the

meaning of the "Three Strikes" law (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)). He was sentenced to 25 years to life in prison.

Appellant contends that his conviction must be reversed because the commissioner who presided over his trial had represented him at his arraignment in this same case and was therefore disqualified from serving as trial judge in this matter. He further contends that the trial court abused its discretion in refusing to strike one of his prior felony convictions and that his sentence constitutes cruel and/or unusual punishment. Respondent contends that the judgment must be modified to reflect a restitution fine pursuant to Penal Code section 1202.4, subdivision (b) and a parole revocation fine pursuant to Penal Code section 1202.45.

We hold that although the commissioner's disqualification was one which, by statute, shall not be waived by the parties and their attorneys, appellant may not now obtain review of the issue, because he failed to seek writ review as required under Code of Civil Procedure section 170.3, subdivision (d).

. We also hold that the trial court did not abuse its discretion in refusing to dismiss a "strike," and that the sentence imposed is not cruel or unusual.

### FACTS

The evidence established that on July 11, 1997, appellant asked a North Hollywood bank teller to cash a check made out to him by S.K. Textile, Inc., in the amount of $386.11. The bank had previously been informed that counterfeit checks from the textile company had been presented for cashing, and the teller received a computer message indicating a possible forgery on the S.K. Textile account. He informed appellant that he had to obtain authorization to cash the check. As the teller walked away, taking with him the check and the identification appellant had presented, appellant and his companion, who had been attempting a similar transaction with another teller, quickly left the bank. The teller summoned police and gave them the check and appellant's identification. The check appellant presented to the bank had not been issued by S.K. Textile. Appellant had never worked for the company and the controller of the company had never issued a check to him.

Appellant sustained two convictions of robbery in 1986.

### PROCEDURAL BACKGROUND

The matter was assigned to Commissioner Michael M. Duffey. Before trial commenced, Commissioner Duffey informed appellant and both counsel that in examining the file, he discovered that he had represented appellant

at his arraignment in this matter some three months earlier while he was employed as a deputy public defender, in which capacity he had worked until his recent election as commissioner.

Commissioner Duffey explained as follows: "I don't think you recall, because it was a brief appearance. I didn't interview you, but my name appears on the arraignment sheet out of Division 100 back in November the 25th, 1997, and I'm the person that stood next to you as you entered your plea of not guilty and set your preliminary hearing date for December the 8th in Division 116. [¶] I've reviewed [defense counsel's] file, and I see my writing as to the new date. So I'm certain that I did appear for you briefly. I don't believe that I interviewed you. I don't believe that I made any motions because it was a Three-Strikes case. Bail was not an issue. [¶] So I made a rather brief appearance. I doubt we even had much in terms of conversation. But I want that to be on the record so [the prosecutor] knows at one point that I did represent you briefly. [¶] [Defense counsel], of course, is on notice of that fact, and you know that. [¶] Before you agree that I hear your case, I want you to be aware of that; and if that causes you any problem one way or the other, I'll be happy to send your case to a different court."

Commissioner Duffey then asked appellant, "Are you willing to have me sit on judgment of you as the commissioner in your case?" Appellant replied, "Yes." The commissioner continued, "Despite the fact I did represent you at one time?" Appellant replied, "Yes." The commissioner asked defense counsel, "Similarly . . . I assume it's not a problem for you?" Defense counsel answered, "No problem, Your Honor." Commissioner Duffey asked defense counsel, "And you signed a stipulation to let me sit?" Counsel responded affirmatively. The commissioner asked appellant whether he had joined in the stipulation. Appellant replied, "Yes, I did."[1] The commissioner asked the prosecutor, "[Y]ou're aware of my involvement in the case, although not very much of an involvement. I did represent Mr. Barrera for a brief time. [¶] Is that any problem for you?" The prosecutor replied, "No problem, Your Honor."

The commissioner stated, "I have told you in chambers, and I've told you on the record. I don't expect that the fact I was a public defender, or more importantly, that I did represent Mr. Barrera for a short period of time, will affect me in any way in this case. I believe I will treat you, Mr. Barrera, as well as [the prosecutor] and [defense counsel], as I would any other attorneys or litigant that appears in front of me." Appellant stated that he

---

[1] A stipulation was signed by appellant, defense counsel and the prosecutor on January 25, 1998, in which the parties agreed that Commissioner Duffey could hear and decide all matters present and future in this matter.

understood this. The commissioner continued, "If you have any reservations at all, now is the time to voice them." Appellant replied, "I don't." The commissioner said to the prosecutor, "[Y]ou've also allowed me to sit as the judge in this case." The prosecutor replied, "Yes, Your Honor." The parties then proceeded to discuss other matters.

## DISCUSSION

I. *Appellant may not now seek appellate review on the ground that the commissioner was disqualified from serving as judge in this matter.*

■ Appellant contends that the purported waivers by the parties were a nullity because the disqualification of the commissioner could not be waived, and that his conviction must therefore be reversed. This claim must fail.

Code of Civil Procedure section 170.1, subdivision (a)(2),[2] provides that a judge "shall be disqualified" if the judge "served as a lawyer in the proceeding, or in any other proceeding involving the same issues he or she served as a lawyer for any party in the present proceeding or gave advice to any party in the present proceeding upon any matter involved in the action or proceeding." The parties do not dispute that Commissioner Duffey comes within this provision.

Section 170.3, subdivision (a)(1) provides, in pertinent part, "Whenever a judge determines himself or herself to be disqualified, the judge shall notify the presiding judge of the court of his or her recusal and shall not further participate in the proceeding . . . unless his or her disqualification is waived by the parties as provided in subdivision (b)." Section 170.3, subdivision (b)(1) provides, in pertinent part, "A judge who determines himself or herself to be disqualified after disclosing the basis for his or her disqualification on the record may ask the parties and their attorneys whether they wish to waive the disqualification, except where the basis for the disqualification is as provided in paragraph (2). . . ." Section 170.3, subdivision (b)(2) provides, "There shall be no waiver of disqualification where the basis therefor is either of the following: [¶] (A) The judge has a personal bias or prejudice concerning a party. [¶] (B) The judge served as an attorney in the matter in controversy . . . ."

Respondent argues that this matter is governed by section 170.3, subdivision (d), which provides as follows: "The determination of the question of

[2]Unless otherwise specified, all further statutory references are to the Code of Civil Procedure.

the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding." Respondent claims that, since this procedure was not followed, the issue raised by appellant, that of the statutory disqualification of a judge, is not properly before us. Appellant counters that the procedure set forth in Code of Civil Procedure section 170.3, subdivision (d), is irrelevant to the instant proceeding because that provision pertains to review of the denial of a judicial disqualification motion, which was not brought in this case, and, more importantly, because under Code of Civil Procedure section 170.3, subdivision (b)(2)(B), the disqualification of Commissioner Duffey was nonwaivable.

We will assume that Commissioner Duffey's prior representation of appellant constituted a disqualification under section 170.1, subdivision (a)(2). The parties and their attorneys purported to waive this disqualification at the outset of proceedings. The question to be decided is whether the statutory provision which indicates that "[t]here shall be no waiver of disqualification" where the judge served as an attorney in the matter in effect automatically results in a void judgment which is reviewable at any time or whether this basis for disqualification is governed by the review procedures set forth in section 170.3, subdivision (d).

The current statutes governing judicial disqualification, section 170 et seq., were enacted in 1984. Those statutes provide in section 170.1 for the grounds for disqualification for cause as set forth in relevant part above, and provide in section 170.3 for the proceedings to be conducted when a judge determines himself or herself to be disqualified, including, in subdivision (b), the procedures to be followed for waiver of the disqualification. As enacted in 1984, however, section 170.3, subdivision (b), did not include the provision that "[t]here shall be no waiver of disqualification" where the judge has a personal bias or prejudice concerning a party or where the judge served as an attorney in the matter. Subdivision (b) of section 170.3 was amended in 1990 to add this provision. (Stats. 1990, ch. 910, § 1, p. 3857-3859.)

No case appears to discuss the issue raised herein, whether a basis for disqualification which shall not be waived pursuant to section 170.3, subdivision (b)(2), results in a void judgment or whether it is merely voidable and

subject to the requirement of timely writ review of section 170.3, subdivision (d).[3]

Under section 170 et seq., judgments or orders by a disqualified judge have been considered merely voidable, not void. "Courts applying the former judicial disqualification statute, Code of Civil Procedure section 170, subdivision (a), held that judgments of a disqualified judge were void. A void judgment is open to attack at any time. [Citation.] However, courts applying the new provisions, Code of Civil Procedure section 170 et seq., adopted in 1984, consider such judgments or orders merely voidable. [Citation.]" (*Church of Scientology* v. *Wollersheim* (1996) 42 Cal.App.4th 628, 655 [49 Cal.Rptr.2d 620].)[4]

The reason for this is explained in *Urias* v. *Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 424 [285 Cal.Rptr. 659]: "Witkin notes little is accomplished by calling the judgment of a disqualified judge 'void'; the problem is one of jurisdiction. While the disqualified judge totally lacks power to hear and determine the cause, the court itself is not without jurisdiction. (2 Witkin, Cal. Procedure [3d ed. 1985], § 75, pp. 90-91.) But the court, with subject matter jurisdiction, may properly be held to lack jurisdiction to act while the judge is disqualified. The problem is more accurately one of excess of jurisdiction. (*Op. cit. supra*, at p. 91.) 'Consequently, the actions of a disqualified judge are not void in any fundamental sense but at most voidable if properly raised by an interested party.' (*In re Christian J.* (1984)

---

[3]In *In re Steven O.* (1991) 229 Cal.App.3d 46 [279 Cal.Rptr. 868], the reviewing court held that a juvenile court referee who had been the prosecutor in earlier proceedings on a petition was disqualified under section 170.1, subdivision (a)(2), from hearing the supplemental petition alleging a violation of probation resulting from that petition. However, the court held that the issue was waived because the minor raised it for the first time on appeal, having failed to comply with section 170.3, subdivision (c)(1), which provides that an objection to the judge's refusal or failure to disqualify himself must be "presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." The opinion presumably concerned matters arising prior to the 1990 amendment of section 170.3, subdivision (b) and did not discuss the relationship between the "no waiver of disqualification" amendment to subdivision (b)(2) and any other provision.

In *Sincavage* v. *Superior Court* (1996) 42 Cal.App.4th 224 [49 Cal.Rptr.2d 615], the judge had been the prosecutor at the preliminary hearing in a case now alleged as a prior conviction of the defendant's. Although this case arose after the amendment to section 170.3, subdivision (b)(2), the court there expressly found that it did not need to address the applicability of that subdivision because the matter was governed by another basis of disqualification, that set forth in section 170.1, subdivision (a)(6)(C), where ". . . a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

[4]In *People* v. *Ah Lee Doon* (1893) 97 Cal. 171, 175-176 [31 P. 933], the Supreme Court held that where a judge was disqualified because he appeared as an attorney in the same proceeding, any actions he took as judge other than certain "formal orders" enumerated in the disqualification statute then in effect were void. However, this case, relied on by appellant, arose under the former statutory scheme.

155 Cal.App.3d 276, 280 [202 Cal.Rptr. 54], as quoted in 2 Witkin, Cal. Procedure, *op. cit. supra*, § 76, p. 92.)"

In determining whether a basis for disqualification which shall not be waived pursuant to section 170.3, subdivision (b)(2), is subject to the requirement of timely writ review of section 170.3, subdivision (d), we must attempt to ascertain the intent of the Legislature. ■ " '[T]he fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]' " (*People v. Hull* (1991) 1 Cal.4th 266, 271 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) We must harmonize the constituent parts of the legislation by considering each clause or section in the context of the entire statutory framework. (*People v. Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].)

First, we look at the 1990 amendment, Senate Bill No. 2316, which added the provision that two bases for disqualification, including the one in question here, shall not be waived. We take judicial notice (Evid. Code, §§ 452, 459) of the legislative history of this amendment. The legislative history indicates that the California Judges Association sponsored the bill to "bring 'Code of Civil Procedure Section 170.3 on judicial self-disqualification into conformity with the new restrictions voted into the Code of Judicial Conduct by California's judges last year . . . . The new language helps assure that even the shadow of bias is kept out of our courts, and provides useful conformity between the judiciary's self-imposed ethical guidelines and the law.' " Nothing in the legislative history indicates that the two nonwaivable bases for disqualification result in a void judgment, and nothing indicates that the two nonwaivable bases for disqualification are to be treated differently from the remaining bases for disqualification in that they, alone, may be raised on appeal.

We next look at the purpose behind the provision for appellate review set forth in section 170.3, subdivision (d) (sometimes hereafter referred to as subdivision (d)). ■ · In three recent cases, the Supreme Court has held that under subdivision (d), writ review is the exclusive means of review of a statutory judicial disqualification claim. (*People v. Williams* (1997) 16 Cal.4th 635, 652 [66 Cal.Rptr.2d 573, 941 P.2d 752]; *People v. Brown* (1993) 6 Cal.4th 322, 334 [24 Cal.Rptr.2d 710, 862 P.2d 710]; *People v. Hull, supra,* 1 Cal.4th at p. 275.) None of these cases involved either of the two nonwaivable bases for judicial disqualification. However, as the Supreme Court observed, subdivision (d) "has the dual purpose of promoting 'judicial economy' and 'fundamental fairness,' " both of which are fostered by the timely seeking of a writ of mandate. (*People v. Hull, supra,* at pp. 272-273.) The purpose behind subdivision (d) is to secure " ' "speedy review

of a disqualification ruling, since permitting that ruling to be attacked later on appeal of the judgment could invalidate every ruling made by the trial court judge after the disqualification motion was denied." ' " (*People* v. *Brown*, *supra*, 6 Cal.4th at p. 333, fn. 8.)

That same rationale governs the situation presented here. Were we to permit review on appeal in this matter, a defendant such as appellant would be able to waive the disqualification and permit the judge to preside over the entire case, secure in the knowledge that, if any portion of the result were unfavorable to him, he could appeal and obtain a reversal of the judgment and a "second 'bite at the apple,' " which would constitute an " 'intolerable windfall.' " (See *People* v. *Hull*, *supra*, 1 Cal.4th at pp. 272-273.) The stated purpose of the amendment, to "assure that even the shadow of bias is kept out of our courts" and to provide "useful conformity between the judiciary's self-imposed ethical guidelines and the law," does not outweigh the public policy considerations underlying the requirement of prompt review of the question of a disqualification which has been disclosed by the judge and waived by the parties and their attorneys.

The procedure set forth by the Legislature for disqualification of judges must be distinguished from the requirements for obtaining appellate relief. One was changed by amendment in 1990; the other was not. The Legislature amended section 170.3, subdivision (b), to provide that a judge may ask the parties and their attorneys whether they wish to waive his or her disqualification *except* in the case of two specified bases of disqualification. The subdivision which was amended governs the procedural steps to be taken when a judge determines himself or herself disqualified and the different ways the various bases for disqualification are to be treated. However, the Legislature did not, in so amending section 170.3, subdivision (b), also amend section 170.3, subdivision (d), to provide for different means of review of the question of disqualification depending on which basis for disqualification is involved. When the Legislature amended section 170.3, had it intended that the nonwaivable bases for disqualification be subject to review on appeal, it presumably would have so provided, either by so stating in subdivision (d) or by deleting the requirement of writ review as to the nonwaivable bases. " 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' [Citations.]" (*Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874].) Thus, while a due process claim regarding judicial bias is reviewable on appeal (*People* v. *Brown*, *supra*, 6 Cal.4th at p. 335), we conclude that a statutory claim—

regardless of its nature—is governed by subdivision (d) and requires timely writ review.[5]

Appellant points out that, since he did not object, there was no ruling from which he could seek writ review as mandated in subdivision (d). However, this does not establish that the subdivision (d) procedure does not apply in the case of a disqualification based on a judge having served as attorney for a party. The fact that such cases as *People* v. *Brown, supra,* 6 Cal.4th 322 discuss the procedure for obtaining review after denial of a disqualification motion does not establish that this procedure applies solely where such motion has been brought; cases discuss only the issues raised in the proceedings therein and are not authority for issues not considered. (*People* v. *Mata* (1986) 180 Cal.App.3d 955, 958, fn. 5 [226 Cal.Rptr. 150].) We have explained why the language of the statute, and public policy concerns, require that the procedure set forth in subdivision (d) be applied in all cases involving statutory grounds for disqualification where the basis of disqualification is known. In this case, we deem the discussion concerning the basis for the commissioner's disqualification and the decision by appellant, his counsel and the prosecutor to waive such disqualification to be the "notice to the parties of the decision" which sets in motion the 10-day period in which a writ of mandate must be sought under section 170.3, subdivision (d).

We conclude, therefore, that in a case such as this, although subdivision (b)(2)(B) of section 170.3 provides that the judge may not ask the parties and their attorneys whether they wish to waive this particular basis for disqualification, parties who were aware of the basis for disqualification and chose to waive it are bound by the requirements governing review set forth in subdivision (d) of section 170.3. Absent a timely petition for a writ, the issue is not reviewable.[6]

II. *The trial court did not abuse its discretion in refusing to strike a prior conviction under Penal Code section 1385.*

 At sentencing, appellant requested that the trial court either declare the offense a misdemeanor or strike at least one of his prior convictions. He argued that his two strike convictions arose out of one case fourteen years

[5]This was not a case where late discovery of the ground for disqualification raised a waiver issue under section 170.3, subdivision (c)(1) or otherwise prevented timely review under section 170.3, subdivision (d), and we do not address that issue. (See *Betz* v. *Pankow* (1993) 16 Cal.App.4th 931, 940 [20 Cal.Rptr.2d 841].)

[6]Although appellant claims, in his reply brief, that Commissioner Duffey's service as trial judge violated his due process right to a fair trial before an impartial judge, his argument, in effect, rests on the statutory basis for disqualification and the policy reasons behind such basis. He fails to suggest any way in which he was actually denied due process.

earlier, that he had suffered only one additional felony conviction, involving drug possession, that his subsequent convictions were all drug related, and that he was a drug addict who had sought help to break himself of his addiction. The trial court declined to exercise its discretion to strike appellant's prior convictions. During a lengthy discussion, the trial court stated that appellant was 40 years old and had not been involved in a drug rehabilitation program long enough to achieve any measure of success, that he had been on probation numerous times and parole at least twice, that his recent offenses had been filed as misdemeanors rather than felonies, saving him from a Three Strikes sentence on those occasions, and that he persisted in committing crimes soon after his release from custody. The trial court stated that despite appellant's lengthy history of substance abuse, "[t]here's no real evidence in my mind of an ability or a motivation on his part to change that life-style" and that the criminal justice system similarly had little or no effect on his criminal life-style. The trial court determined that a second strike sentence would be inappropriate and imposed the term of 25 years to life in prison.

Appellant contends that the trial court abused its discretion in refusing to strike one of his prior felony convictions and that he is being punished for being a drug addict. We disagree.[7]

In *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628], the Supreme Court held that trial courts have the authority to strike a prior conviction in furtherance of justice under Penal Code section 1385. The court stated that in determining whether to strike a defendant's prior convictions under Penal Code section 1385, the trial court must take into consideration the defendant's background, the nature of his current offense, and other " 'individualized considerations.' " (*Id.* at p. 531.)

In *People* v. *Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429], the Supreme Court further set forth principles which should guide a trial court in the exercise of its discretion under Penal Code section 1385 and on the standards under which an appellate court is to review that exercise of discretion. The court stated that in *Romero*, it had implied that "preponderant weight must be accorded to factors intrinsic to the [Three Strikes] scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*People* v. *Williams, supra,* at p. 161.) ■ In deciding whether to strike a prior conviction, and in reviewing a trial court's ruling, ". . . the court in question must consider whether,

---

[7]We reject respondent's claim that this issue is not reviewable on appeal by appellant. (*People* v. *Gillispie* (1997) 60 Cal.App.4th 429, 433-434 [70 Cal.Rptr.2d 462].)

in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*)

" 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. . . . In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*People* v. *Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978 [60 Cal.Rptr.2d 93, 928 P.2d 1171].)

██ The record establishes that the trial court here fully considered appellant's background, the nature of his current offense, and the individualized considerations of his long-standing drug addiction and the pattern and nature of his criminal history, and that it properly concluded that appellant was not, even in part, outside the spirit of the Three Strikes scheme. The court pointed out to appellant that after "dodging a bullet, dodging that 25-[year]-to-life sentence on the petty theft with a prior in June of [19]97, you get out, and then immediately become involved in this forgery case. . . . You get out of prison, you immediately start using drugs and get violated and go back to prison. . . . [¶] So what it tells me is you really are a career criminal, a person whose criminal activity has continued unabated, despite all the efforts of the criminal . . . justice system, your family, the drug rehabilitation efforts that you claim to have made." .

The court further stated, "Not only have you picked up, since your release in prison, 11 different misdemeanors from April of 1990, including two of them that could have been charged as third strikes, you have the three prior felonies, one of which occurred right after prison. [¶] The instant case, although I agree it is not a serious case in and of itself, to me it's much more serious than some of the spontaneous cases that we see where a person drunk, or a person under the influence goes in and steals a bottle of liquor and gets filed as a three strike; . . . [¶] This is a case that involved much more planning and sophistication . . . . This is a case in which you and the people you were involved with manufactured a check, had enough resources to pretty much duplicate the check, as was testified to by the textile industry manufacturing people . . . . The amount was not large; but again, it shows me that you really have absolutely no regard for the criminal justice system. [¶] Your probation violations are numerous. Your parole violations are

numerous. [¶] What I'm really saying is my feeling about you is that there is really very little chance that you're going to change your life-style . . . ."

On this record, where the trial court considered the relevant criteria, including appellant's lengthy criminal history and the timing and nature of his offenses, none of which reflect well upon his prospects, we find no abuse of discretion in the trial court's refusal to strike one or both of appellant's prior felony convictions. (*People* v. *Cline* (1998) 60 Cal.App.4th 1327, 1336-1337 [71 Cal.Rptr.2d 41].)

III. *Appellant's sentence does not constitute cruel and/or unusual punishment.*

Appellant contends that the sentence of 25 years to life in prison, as applied to him, constitutes cruel and/or unusual punishment in violation of article I, section 17 of the California Constitution and the Eighth Amendment to the United States Constitution. This claim lacks merit.

Appellant argues that his sentence is unconstitutional under *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921]. In accordance with *Lynch*, the court examines the nature of the offense and of the offender, "with particular regard to the degree of danger both present to society." (*Id.* at p. 425.) In analyzing the nature of the offender, we consider his "age, prior criminality, personal characteristics, and state of mind," and in analyzing the nature of the offense we consider the circumstances of the particular offense such as the defendant's motive, the way the crime was committed, the extent of his involvement and the consequences of his acts. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697].)

As the trial court found, this offense was premeditated and sophisticated. Appellant, who was 40 years old, had an adult criminal history which commenced when he was 19 and continued unabated. After his release from prison in 1988 following his robbery convictions, he was convicted of possession of a controlled substance and again sent to prison. His numerous convictions since his release from prison in 1990 were not merely drug possession or under the influence cases but also included vandalism and theft. As the trial court determined, neither his personal efforts nor his involvement with the criminal justice system served to effect his rehabilitation; he persisted in reoffending as soon as he was released from custody. On this record, appellant's sentence does not shock the conscience or offend fundamental notions of human dignity. (*In re Lynch*, *supra*, 8 Cal.3d at p. 424.)

Appellant's claim that his sentence violates the proportionality requirement of the Eighth Amendment to the United States Constitution also fails. Proportionality analysis has little relevance in noncapital cases. (*Harmelin* v. *Michigan* (1991) 501 U.S. 957, 965 [111 S.Ct. 2680, 2686, 115 L.Ed.2d 836]; *People* v. *Cooper* (1996) 43 Cal.App.4th 815, 820-823 [51 Cal.Rptr.2d 106].) Moreover, although the offense of which he was convicted was nonviolent, it was premeditated, and the fact that he is a recidivist offender who committed serious felonies as well as numerous other crimes before committing this offense convinces us that his punishment does not offend the United States Constitution. (*People* v. *Cooper, supra,* at pp. 823-825.)

## IV. *The judgment must be modified to reflect a restitution fine and a parole revocation fine.*

At sentencing, the trial court failed to impose a restitution fine pursuant to Penal Code section 1202.4, subdivision (b). In the interest of judicial economy, we will modify the judgment to reflect the minimum restitution fine of $200. (*People* v. *Vasquez Diaz* (1991) 229 Cal.App.3d 1310, 1316 [280 Cal.Rptr. 599].)

The trial court also failed to impose a parole revocation fine pursuant to Penal Code section 1202.45. Section 1202.45 provides, "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4. This additional restitution fine shall be suspended unless the person's parole is revoked." Appellant's sentence includes a period of parole. (Pen. Code, § 3000, subds. (a), (b).) As respondent contends, the trial court was thus required to impose, and suspend, an additional restitution fine in the amount of the Penal Code section 1202.4, subdivision (b) restitution fine. (*People* v. *Hong* (1998) 64 Cal.App.4th 1071, 1084 [76 Cal.Rptr.2d 23].) We will order that a $200 fine be imposed and suspended.

### DISPOSITION

The judgment is modified to reflect a $200 restitution fine pursuant to Penal Code section 1202.4, subdivision (b) and a $200 fine pursuant to Penal Code section 1202.45, the latter fine to be suspended unless appellant's

parole is revoked. The abstract of judgment is to be amended to reflect these fines. In all other respects, the judgment is affirmed.

Boren, P. J., and Zebrowski, J., concurred.

A petition for a rehearing was denied March 23, 1999, and appellant's petition for review by the Supreme Court was denied June 3, 1999.