Filed 7/31/14  P. v. Gray CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058595 |
| v. | (Super.Ct.No. INF1100632) |
| QUINTON ULESSESS GRAY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Graham Anderson Cribbs, Judge.  (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Quinton Ulessess Gray guilty of first degree robbery (Pen. Code, §§ 211, 212.5, subd. (a); count 1)[1] and assault with a deadly weapon (§ 245, subd. (a)(1); count 3).[2] The jury also found true that in the commission of counts 1 and 3, defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)). In a bifurcated proceeding, the same jury found that defendant was legally sane when he committed the offenses. In a subsequent bench trial, the trial court found true that defendant had suffered eight prior prison terms (§ 667.5, subd. (b)), three prior serious felony convictions (§ 667, subd. (a)), and three prior serious and violent felony strike convictions (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)). After the trial court denied defendant's motion to dismiss his prior strike convictions, defendant was sentenced to an aggregate determinate term of 23 years, plus a consecutive indeterminate term of 29 years to life in state prison with credit for time served.

On appeal, defendant contends: (1) the trial court abused its discretion in denying his motion to strike prior remote convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*); (2) the trial court erred in staying three of his prior prison term enhancements, rather than striking them; (3) the trial court erred in imposing a criminal conviction assessment fee pursuant to Government Code section 70373 in the amount of $40 on each of the two convicted counts; and (4) he is entitled to an additional

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] The jury was unable to reach a verdict on count 2, residential burglary (§ 459), and a mistrial was declared as to that count. The People later dismissed that charge.

11 days of presentence custody credits. For the reasons explained below, we will affirm the judgment with modifications.

I

FACTUAL BACKGROUND

On March 9, 2011, Lance Ybarra was sleeping in his home when he was awoken by a knock at the front door. Ybarra ignored the knock and went to the bathroom. While inside the bathroom, Ybarra heard a loud noise. Ybarra walked into his living room and saw defendant standing inside. Ybarra told defendant to get out of his house. When defendant refused to comply, Ybarra punched him. Defendant responded by hitting Ybarra in the head several times with a rock the size of a grapefruit. Ybarra eventually made his way to the back door and outside his residence, as defendant repeatedly struck him on the head with the rock.

Once outside, Ybarra flagged down a car and asked the occupants inside to call 911. The occupants noticed that Ybarra was covered in blood and that his skull was visible through the lacerations on his scalp. As the occupants spoke with Ybarra, they all saw defendant carrying a flat screen television out of Ybarra's home and loading it into a Toyota sedan. Ybarra asked the occupants to approach the vehicle and to take down the car's license plate number. As they neared the vehicle, defendant made threatening gestures and remarks and scared the occupants off.

Paramedics and police eventually arrived. Ybarra was taken to a hospital. As a result of the assault, Ybarra suffered three scars on his head and painful headaches that lasted for several months.

Sergeant Gustavo Paiz heard a police broadcast of a home invasion robbery and the description of the suspects. Approximately 20 to 30 minutes later, Sergeant Paiz located the vehicle and conducted a high-risk traffic stop. Defendant was the driver of the vehicle and a male was in the passenger seat. After handcuffing defendant and his passenger, Sergeant Paiz located two remote controls with blood on them. Sergeant Paiz did not find the television in the car. Sergeant Paiz also noticed blood spots on defendant's pants. Defendant was arrested, and soon thereafter, Ybarra identified defendant during a curbside lineup.

Ybarra's blood was splattered both inside and outside of his residence. Police discovered a rock with possible blood on it in the dining area of Ybarra's house; a shoe print on the front exterior door; and a shoe impression in the dirt by the door. The shoeprint impressions matched the tread pattern on the soles of the boots defendant was wearing when he was arrested. Later, Ybarra found some glasses and a watch that did not belong to him. Ybarra gave the items to the police. DNA samples taken from these items matched the DNA samples obtained from defendant.

II

DISCUSSION

A. *Motion to Strike Priors*

Defendant contends the trial court abused its discretion in denying his *Romero* motion to strike his prior remote convictions. We disagree.

Section 1385 gives the trial court authority to order an action dismissed, "in furtherance of justice." (§ 1385, subd. (a).) Under this authority, the court may vacate a prior strike conviction for purposes of sentencing under the Three Strikes law, "subject, however, to strict compliance with the provisions of section 1385." (*Romero*, *supra*, 13 Cal.4th at p. 504.) The decision to strike a prior conviction is reviewed under an abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

Dismissal of a strike is a departure from the sentencing norm. As such, in reviewing a *Romero* decision, we will not reverse for abuse of discretion unless the defendant shows the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.) Reversal is justified where the trial court was unaware of its discretion to strike a prior strike or refused to do so, at least in part, for impermissible reasons. (*Id*. at p. 378.)

In ruling on a *Romero* motion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence

should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Here, the trial court considered the probation report, testimony and reports from the psychologists and arguments of counsel, the intent and spirit of the law, defendant's mental health issues, and defendant's criminality, including the remoteness of the priors and defendant's failure to lead a crime-free life. Despite defendant's mental health problems and the remoteness of the priors, the court declined to exercise its discretion to strike any prior strikes. The record supports the trial court's conclusion.

Defendant's criminal history dates back over 35 years. He began a life of crime in 1976 as a juvenile when he committed a robbery. A few years later, in 1978, he was convicted of assault and battery. In 1980, he sustained two convictions for second degree burglary; in 1981, a second conviction for robbery; and in 1985, a third conviction for burglary. Thereafter, in 1988, defendant was convicted of discharging a firearm at an inhabited dwelling or an occupied motor vehicle and sentenced to state prison for five years. In 1991, he sustained a conviction for possessing a controlled substance; and in 1992, a conviction for vehicle theft. In 1992, he was also convicted of transportation or sale of a controlled substance and sentenced to six years in state prison. In 1998, he was convicted of first degree burglary (his fourth burglary conviction) and sentenced to eight years in state prison. Finally, in 2004, defendant sustained a second conviction for transportation or sale of a controlled substance and was sentenced to six years in state prison.

Defendant accumulated nine felony and several misdemeanor convictions between 1976 and 2004. Eight prison terms and countless years in jails did not persuade him to change his criminal ways. Although he has repeatedly been granted probation and parole, his performance was dismal. He was on parole and/or on probation when he committed many of the offenses in this case. His 35-year criminal record, in short, made him "the kind of revolving-door career criminal for whom the Three Strikes law was devised." (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320 (*Gaston*).) The denial of his *Romero* motion was not an abuse of discretion. The court was aware of its discretion, properly considered the relevant facts and factors, and there is nothing on this record that removes defendant from the three strikes scheme.

While conceding he has not led a "blameless" life since his 1981 and 1988 convictions, defendant asserts the court failed to adequately consider his mental illnesses and possible brain damage and should have struck the remote convictions in light of his long history of serious mental health issues. Courts have routinely rejected arguments where the defendant did not live a crime-free life between his or her strike prior and current crimes. (E.g., *Gaston*, *supra*, 74 Cal.App.4th at p. 321 [abuse of discretion to strike 17-year-old prior where the defendant's "continuous crime spree . . . substantially spanned his entire adult life"]; *People v. Barrera* (1999) 70 Cal.App.4th 541, 554-555 [refusal to dismiss 14-year-old strike justified where the defendant's criminal activity "continued unabated" upon his release from prison, "despite . . . the drug rehabilitation efforts" he claimed to have made]; *People v.*

*Humphrey* (1997) 58 Cal.App.4th 809, 813 (*Humphrey*) [reversing the dismissal of a 20-year-old prior].)  "In determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on." (*Humphrey*, at p. 813.)  A remote prior may properly be stricken where the record establishes "a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*Ibid.*)  That was not the case here.  Here, as in the above cases, defendant's 35-year criminal record renders the remoteness of his prior strike "not significant." (*Gaston*, at p. 321.)

Furthermore, we disagree with defendant's characterization of the record that the trial court "gave insufficient consideration" to defendant's mental illnesses.  As the record demonstrates, the trial court was well aware of defendant's mental health issues. The trial court earlier had presided over the sanity phase of the trial and, as such, had before it the testimony of psychologists, Drs. Robert Suiter and Michael Leitman.  The court also had psychological reports filed in response to defendant's competency concerns.  The jury found defendant was legally sane when he committed the instant offenses.  It therefore necessarily found that defendant's mental disease or defect did not render him "incapable of knowing or understanding the nature and quality of (his/her) act" or "incapable of knowing or understanding that his act was morally or legally wrong."  The psychologists also found that while defendant suffered from a schizophrenic condition with evidence of antisocial behavior and poly-substance abuse, defendant was voluntarily taking his medications and as a result of the medications,

8

defendant was capable of understanding the nature and objective of the proceedings against him.  Moreover, in emphasizing the mental health issues that are part of his background, defendant either ignores or minimizes other aspects relevant to the *Romero* motion that were unfavorable to him.  The current offenses involved great violence, namely, defendant bashing the victim's skull repeatedly with a rock, and defendant's history of serious and violent convictions, incarcerations, and the commission of new offenses within short periods of time after being released.

Defendant does not cite any authority—nor are we aware of any—that suggests that a court should grant a *Romero* motion where the defendant makes a showing that mental illness played some role in his criminal history.  In fact, in *People v. Carrasco* (2008) 163 Cal.App.4th 978 (*Carrasco*), where the defendant's *Romero* motion was based on the fact that he had "'significant mental health history and issues'" and was "suffering from the effects of long-term drug use" (*id*. at p. 992), the Court of Appeal rejected the defendant's claim that "the [trial] court erroneously found it lacked authority to consider [his] mental condition as a factor." (*Id*. at p. 993.)  In *Carrasco*, in denying the motion, the trial court commented that case law did not authorize consideration of the defendant's "'mental state, his mental condition, the reasons why he wanted to do these things.'" (*Id*. at p. 993.)  The appellate court explained, "The record reflects the trial court considered a wide range of appropriate factors in passing sentence, particularly the nature and circumstances of appellant's present and past convictions." (*Ibid*.)  Since the trial court had expressly considered the defendant's "background and character in ruling

on the motion," its remarks about his mental condition amounted to "an acknowledgement that the court could not give undue weight to an inherently speculative argument that defendant's mental state 'made him do it.'" (*Id*. at pp. 993-994.)

In the present case, the trial court made only a brief reference to the evidence of defendant's mental illness. Specifically, the court stated: "I don't know how else to say it—as bad as it can be in the context of what his behavior has been like. However, that's not to say that the Court is not mindful of the [insanity] defense that was presented in this case, and the Court having expressed concern regarding [defendant] . . . ." However, as noted previously, the record does not demonstrate the trial court failed to consider that evidence. "We view the totality of the trial court's statement of reasons, not just one snippet." (*Carrasco*, *supra*, 163 Cal.App.4th at p. 993.) As in *Carrasco*, the record reflects the trial court believed that the totality of the circumstances did not justify dismissing any or all of defendant's strikes. "'[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Given defendant's criminal history, his inability to avoid criminal activity for a substantial period of time, and his violent behavior, the trial court was well within its discretion to find that defendant fell within the spirit of the Three Strikes law despite his mental health history. Thus, we conclude the trial court did not abuse its discretion in declining to strike some or all of defendant's prior strike convictions.

10

B.      *Sentence on the Three Prior Prison Terms*

Defendant also claims the trial court erred in staying, rather than striking, three of his eight prison prior sentence enhancements (§ 667.5, subd. (b)).  Defendant argues the trial court properly recognized that it could not impose both a one-year prison prior sentence enhancement (§ 667.5, subd. (b)) and a five-year serious felony sentence enhancement (§ 667, subd. (a)(1)) based on the same prior convictions, but that the trial court erred in staying, rather than striking, the prison prior enhancements.  The People correctly concede the error.  We agree the trial court was required to strike, rather than stay, the sentence enhancement on the three prior prison term enhancements.  (See *People v. Jones* (1993) 5 Cal.4th 1142, 1153 (*Jones*).)

In *Jones*, the defendant was sentenced to five years for a section 667, subdivision (a) enhancement, and to a one-year section 667.5, subdivision (b) enhancement, based on a prior conviction for a single serious felony and the resulting prior prison term for that felony.  (*Jones*, *supra*, 5 Cal.4th at p. 1145.)  The *Jones* court held that a single prior conviction cannot be the basis of both a prior serious felony enhancement and a prior prison term enhancement.  (*Id*. at p. 1150.)  The court concluded that when multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement—but only that one—will apply.  (*Jones*, at p. 1150.)  Because the trial court in *Jones* had used the same offense to impose a five-year term (because the underlying offense was a serious

11

felony) and a one-year term (because the defendant was imprisoned for the prior serious felony), *Jones* held the one-year term should be stricken. (*Jones*, at pp. 1150-1153.)

Likewise, the trial court here imposed both a serious felony prior enhancement under section 667, subdivision (a)(1), and a prison prior enhancement under section 667.5, subdivision (b), based on the same three qualifying convictions (a 1998 residential burglary (second prison prior offense); a 1988 shooting at an inhabited dwelling (fifth prison prior offense); and a 1981 robbery (seventh prison prior offense)). Rather than remanding the matter as the People suggest, we will strike the one-year second, fifth, and seventh prior prison term enhancements.

C.     *Criminal Conviction Assessment Fee*

Defendant further argues the Government Code section 70373 criminal conviction assessment fee should be reduced to $30 per count. The People agree.

Government Code section 70373, subdivision (a)(1), states: "To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense . . . . The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony and in the amount of thirty-five dollars ($35) for each infraction." The statute operates upon the event of a defendant's conviction. (*People v. Castillo* (2010) 182 Cal.App.4th 1410, 1414; *People v. Fleury* (2010) 182 Cal.App.4th 1486, 1492.)

In the present matter, at the April 19, 2013 sentencing hearing, the trial court mistakenly imposed a Government Code section 70373 fee in the amount of $40 on each

of the convicted counts or $80. The clerk's minute order of the sentencing hearing also erroneously shows that defendant was ordered to pay a criminal conviction assessment fee pursuant to Government Code section 70373 in the amount of "$80 [$30 per convicted charge]." The same error appears in the abstract of judgment.

Accordingly, the Government Code section 70373 criminal conviction assessment fee should be reduced to $30 per count, or $60.

D.     *Presentence Custody Credits*

Lastly, defendant contends the trial court erroneously calculated the amount of his custody credits. He argues that he is entitled to a total of 888 days, an additional 11 days over the 877 days he was awarded. The People agree defendant is entitled to an additional 11 days of presentence custody credits.

Credits for presentence custody are calculated from the day of arrest through the day of sentencing. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.) Defendant was taken into custody on March 9, 2011, and was sentenced on April 19, 2013. Defendant therefore spent 773 days in custody before he was sentenced, not 763 days as noted by the trial court. Conduct credit is calculated under section 2933.1. Section 2933.1, subdivision (a), provides, "(a) Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." Robbery is a violent felony offense listed in section 667.5, subdivision (c)(9). Because defendant served 773 actual days in custody, the correct amount of good conduct credits under the

13

15 percent limitation is 115 days. Accordingly, defendant is entitled to a total of 888 days (773 plus 115) in presentence custody credits.

Furthermore, although not raised by either party, we note that the clerk's minute order of the April 19, 2013 sentencing hearing and the abstract of judgment erroneously note that defendant was sentenced to an indeterminate term of 25 years to life. At the time of oral pronouncement, the trial court sentenced defendant to a determinate term of 23 years and a total indeterminate term of 29 years to life. When there is a discrepancy between the oral pronouncement of a sentence and the minute order or the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) In such circumstances, appellate courts may order correction of the clerk's minute order and abstracts of judgment that do not accurately reflect the oral judgments of sentencing courts. (*Ibid.*) Therefore, we order the clerk's minute order of the sentencing hearing and the abstract of judgment be corrected so as to reflect the trial court's oral pronouncement of judgment.

III

DISPOSITION

The judgment is modified to strike the one-year second, fifth, and seventh prior prison term enhancements. The judgment is also modified to reflect a criminal conviction assessment fee pursuant to Government Code section 70373 in the amount of $30 per convicted count, or $60. The judgment is further modified to reflect 773 actual days in presentence custody, plus 115 days of conduct credit attributable to the

14

presence custody, for a total of 888 days in presentence custody credits.  The clerk of the superior court is directed to prepare an amended abstract of judgment and minute order of the April 19, 2013 sentencing hearing to reflect defendant's total indeterminate sentence as 29 years to life as well as the modifications noted above and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


RICHLI
J.


MILLER
J

15