Filed 1/25/16  P. v. Lewis CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|   |   |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062850 |
| v. | (Super.Ct.No. FVI1301449) |
| KAROME DYNELL LEWIS, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Loleena Ansari, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant and appellant, Karome Dynell Lewis, and codefendant, James Michael Wilson, were charged with one count of kidnapping Willy Neal from an apartment complex in Las Vegas, Nevada and with transporting Neal into California. (Pen. Code, § 207, subd. (d).) Defendant and Wilson were tried separately and a jury convicted defendant as an aider and abettor to the kidnapping. The trial court found defendant had three prior strike convictions based on one incident in 1995, and denied defendant's *Romero*[1] motion to dismiss two of his three prior strikes. Defendant was sentenced to an indeterminate term of 25 years to life.

On appeal, defendant contends his kidnapping conviction must be reversed because there was insufficient evidence connecting him to the kidnapping and, thus, insufficient evidence to support his conviction. He further contends the trial court abused its discretion in denying his *Romero* motion to dismiss two of his prior strike convictions. We affirm the judgment, as substantial evidence supported defendant's kidnapping conviction, and as the trial court did not abuse its discretion in declining to dismiss two of defendant's prior strike convictions.

# II. STATEMENT OF FACTS

A. *Prosecution Evidence*

At approximately 11:00 a.m. on May 21, 2013, witnesses who were at an apartment complex in Las Vegas, Nevada heard screams of "I didn't take it," "I don't

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

have it," or "I didn't do it," and saw Neal being forced into the backseat of a vehicle. According to eyewitnesses, Neal resisted attempts to be forced into a gray sports utility vehicle until Wilson subdued Neal by slamming Neal's head against the door of the vehicle and then forcing Neal into the driver's side rear seat. One witness identified the vehicle's license plate number. Other witnesses testified that Wilson was wearing a white shirt, Neal was wearing a red shirt, and Wilson was significantly larger in stature than Neal. One witness told police that Wilson had an accomplice seated in the passenger's side rear seat of the vehicle, and that the accomplice grabbed and held a bloodied Neal down after Neal had been forced into the backseat. Although the witnesses at the scene in Las Vegas were generally able to describe Wilson, Neal, and the vehicle, none of the witnesses were able to provide a description of the accomplice.

A few hours later, a California Highway Patrol officer who was in Barstow received a dispatch to be on the lookout for the vehicle. Around 2:00 p.m., approximately three hours after witnesses saw Neal being forced into the backseat of the vehicle, the officer spotted a vehicle matching the description and license plate of the vehicle the witnesses described. The officer followed the vehicle as it exited the freeway and pulled into a gas station. The officer conducted a felony stop and all three individuals were placed in handcuffs. At the time of the felony stop, two of the individuals were seated in the backseat of the vehicle. The officer ran all three occupants' driver's licenses and identified them as Wilson, Neal, and defendant, with Wilson being the driver. The officer testified that Wilson was wearing a gray shirt and

that Neal was wearing a red shirt. Neal was crying and saying, "Take me away from them. Take me away from them." The officer also observed that Neal was smaller in build compared to both defendant and Wilson, and that the victim had bruising on both sides of his neck. Neal told the officer that the bruising was the result of being held down by the collar. The officer arrested defendant and Wilson.

B. *Defense Evidence*

At trial, defendant did not testify and presented no other affirmative defense.

### III. DISCUSSION

A. *Substantial Evidence Shows Defendant Aided and Abetted the Kidnapping*

Defendant contends his kidnapping conviction must be reversed because there was insufficient evidence that he was the person in the backseat of the vehicle who aided and abetted Wilson in kidnapping Neal in Las Vegas. Thus, he argues his kidnapping conviction was not supported by substantial evidence. Not so.

Where the sufficiency of the evidence is challenged on appeal, the appellate court "must determine from the entire record whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. In making this determination, the reviewing court must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt. [Citations.]" (*People v. Mincey* (1992) 2 Cal.4th 408, 432, fn.

omitted.) "'"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]"'"' (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) Substantial evidence includes circumstantial evidence and the logical inferences that the jury may have drawn from the evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Circumstantial evidence may be used to establish identity. (*People v. Romero and Self* (2015) 62 Cal.4th 1, 33.) It can also be used to connect a defendant to the commission of a crime. (*People v. Allen* (1985) 165 Cal.App.3d 616, 625.)

Section 207, subdivision (d), of the Penal Code provides that: "Every person who, being out of this state, abducts or takes by force or fraud any person contrary to the law of the place where that act is committed, and brings, sends, or conveys that person within the limits of this state, and is afterwards found within the limits thereof, is guilty of kidnapping." All persons concerned in the commission of a crime, whether as a direct perpetrator or as an aider and abettor, are principals in the crime. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1117.) An aider and abettor is equally as culpable as the actual perpetrator. (*Id.* at p. 1120.) To be convicted as an aider and abettor, there must be proof that the "aider and abettor act[ed] with knowledge of the criminal purpose of the

perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*People v. Beeman* (1984) 35 Cal.3d 547, 560; *People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 740.) Because it is difficult to prove one's intent through direct evidence, the intent to commit an act may be proven circumstantially. (*In re Jorge M.* (2000) 23 Cal.4th 866, 884.) For example, "'the act itself, together with its surrounding circumstances [may] generally form the basis from which the intent of the actor may legitimately be inferred.' [Citation.]" (*People v. Edwards* (1992) 8 Cal.App.4th 1092, 1099.)

Here, witnesses testified that a man in a white shirt forced a much smaller victim in a red shirt into the back of a sports utility vehicle and that an accomplice held the victim down as the driver drove away. The officer testified that, approximately three hours after the abduction, defendant, Wilson, and Neal were in the vehicle when it was stopped in California, and that defendant and Neal were in the backseat. Wilson and Neal matched the descriptions given by the witnesses, and the officer observed that both defendant and Wilson were significantly larger than Neal. Neal also had bruising around his neck, was crying, and implored the officer to "take me away from them. Take me away from them." Based on this evidence, the jury could have reasonably inferred that defendant was the person who was holding Neal down in Las Vegas as Wilson drove the vehicle away, and that, by holding Neal down, defendant intended to encourage or facilitate the kidnapping of Neal. Thus, defendant's conviction for aiding and abetting the kidnapping of Neal is supported by substantial evidence.

B.  *The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Romero Motion*

Defendant next contends the trial court abused its discretion when it refused to strike two of his three prior strike convictions that arose from the same 1995 offense.  We reject this contention.

The "Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*, *supra*, 13 Cal.4th at p. 528.)  Thus, when a court is asked to dismiss prior strikes in "furtherance of justice" (Pen. Code, § 1385, subd. (a)), it "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  Examples of factors that a court may consider include the defendant's age (*People v. Gaston* (1999) 74 Cal.App.4th 310, 321-322), the length of time between the commission of the prior strikes and the current crime (*People v. Bishop* (1997) 56 Cal.App.4th 1245, 1251), or whether the current or past offenses involved violence (*People v. Myers* (1999) 69 Cal.App.4th 305, 308-310).  Most importantly, the court must look to the defendant's conduct between the commission of the strike and the current crime.  (*People v. Williams*, *supra*, at p. 163.)  Whether a defendant has suffered misdemeanor violations, or violated parole or probation, are aggravating factors that the court may consider in denying a

*Romero* motion. (*People v. Barrera* (1999) 70 Cal.App.4th 541, 553-555; *People v. McGlothin* (1998) 67 Cal.App.4th 468, 475.) Also, a defendant who suffers multiple convictions for violent crimes arising out of a single act, but that affects multiple victims, can be deemed to have suffered multiple strikes under the "Three Strikes" law. (*People v. Rusconi* (2015) 236 Cal.App.4th 273, 280-281.)

A court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "'"[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."'" (*Id.* at pp. 376-377.) The trial court is not required to "'explain its decision not to exercise its power to dismiss or strike' . . . . [Citation.]" (*Id.* at p. 376.) Any error in declining to strike a prior felony conviction "must affirmatively appear on the record. On a silent record in a post-*Romero* case, the presumption that a trial court ordinarily is presumed to have correctly applied the law should be applicable. [Citations.]" (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434.) "[T]he trial court may ordinarily rely on the record of conviction to justify the denial of relief under Penal Code section 1385." (*Ibid.*)

Here, the court summarily denied defendant's *Romero* motion without explaining its grounds for denial. Defendant thus contends that the court abused its discretion in

denying the motion, because the record does not indicate why the court denied the motion. But the trial court was not required to explain its reasons, and the record supports its decision to deny defendant's *Romero* motion. Defendant's three prior strikes arose from a 1995 incident where defendant, who was then 19 years old, and two companions committed an armed robbery of a restaurant. Defendant was convicted of one count of burglary, six counts of robbery, one count of attempted robbery, and seven counts of false imprisonment, and received a prison sentence of 10 years 4 months. He was released from prison around 2001, but violated parole in 2002 and 2003. He was also charged in New Mexico, Connecticut, and California with drug-related offenses in 2005, 2008, and 2011, respectively, before being arrested in 2013 for the current offense.

Both the past strikes and the current offense involved the use of violence, and defendant has repeatedly run afoul of the law between the commission of the prior strikes and of the current crime. Defendant points out that he "had been out of custody for around 13 years [since his three prior strikes], where he did not sustain any new convictions." But as noted, between the time he was released from prison in 2001 and the kidnapping in 2013, he violated parole twice and was arrested three times for drug-related offenses. Based on his conduct between the commission of the prior strikes and the current crime, the trial court reasonably determined that defendant fell within the spirit of the Three Strikes law, and it did not abuse its discretion when it declined to dismiss two of defendant's three prior strikes.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____

J.

We concur:

HOLLENHORST _____

Acting P. J.

MILLER _____

J.