Filed 9/17/20  P. v. Salas CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>JOSEPH DAVID SALAS,<br><br>        Defendant and Appellant. | F078392<br><br>(Super. Ct. No. BF171379A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp and Harry A. Staley, Judges.[†]

Jenny M. Brandt, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Homeowner Kamaljit Dhillon (Dhillon or victim) found Joseph David Salas (defendant) inside his rental property and told defendant to leave.  Defendant approached

---

[†]        Judge Gregory A. Pulskamp presided over defendant's trial; Judge Harry A. Staley, a retired Judge of the Kern Superior Court assigned by the Chief Justice pursuant to article VI, § 6 of the California Constitution, pronounced his sentence.

Dhillon with a knife and swung at him, cutting Dhillon's palm before he fled. A jury convicted defendant of assault with a deadly weapon as a result of the incident. On appeal, defendant argues the court reversibly erred by admitting evidence of defendant's prior bad act—another incident when Dhillon found and confronted defendant in Dhillon's house—pursuant to Evidence Code section 1101, subdivision (b) (section 1101(b)). Defendant further contends his case should be remanded for a new sentencing hearing to permit the court to exercise its discretion and decide whether to strike his prior serious felony enhancement in light of Senate Bill No. 1393 (2017–2018 Reg. Sess.). He also argues the court erred in refusing to strike his prior strike conviction and that certain fines and fees should be stayed or vacated because they were imposed without an ability to pay hearing in violation of defendant's due process rights.

We remand for a new sentencing hearing to permit the court to exercise its discretion and determine whether to strike defendant's prior serious felony enhancement and for further proceedings consistent with this opinion. In all other respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Dhillon owned a rental property in Bakersfield, California. He visited the property with his real estate agent, Roger Magana, so that Magana could photograph the property to rent or sell it. When they arrived, the front door to the property had been removed and placed against the wall, and the security door was open. Dhillon had previously boarded up the windows because of an intruder. The boards had been removed and the glass windows were broken.

Dhillon walked into the house and saw defendant in the living room. Dhillon told defendant to get out; defendant responded that it was his house and he told Dhillon to get out. Dhillon again told defendant to leave, but defendant refused. Defendant then approached Dhillon with a knife. Defendant waved the knife toward Dhillon's upper body. Dhillon put his right hand up to block his face, and defendant hit Dhillon's hand

with the knife causing a minor cut.  Dhillon's hand started bleeding and he walked outside; defendant then ran away.  Dhillon called the police.

When the police arrived, Dhillon walked through the house with them.  There was graffiti on the walls and holes in the walls; the stove, dishwasher, granite kitchen counters, and refrigerator were broken; and the toilet was misplaced.  Dhillon did not witness the damage occur.  Dhillon spent between $11,000 and $12,000 to repair the damage to the property.  The police photographed Dhillon's hand and the pictures were admitted at trial.  Before the incident, Dhillon had previously called the police four or five times because he found defendant on the property.  Defendant would leave before the police arrived.

Defendant was charged with assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1) (count 1), vandalism in violation of Penal Code section 594, subdivision (b)(1) (count 2), and burglary in violation of Penal Code section 460, subdivision (b) (count 3).  The jury convicted defendant of assault with a deadly weapon (count 1) and found him not guilty of vandalism and burglary (counts 2 and 3).  The court sentenced defendant to a three-year term, doubled based on a prior strike conviction, and enhanced by an additional five-year term for a prior serious felony conviction for a total aggregate term of 11 years' imprisonment.

## DISCUSSION

### I. Admission of evidence of defendant's prior bad act

Defendant argues the trial court erred in admitting evidence of his previous encounter with Dhillon.  We disagree.

#### A. Relevant Factual Background

Before trial, the prosecutor moved to introduce evidence of a previous incident, when Dhillon encountered defendant in Dhillon's rental property, pursuant to section 1101(b) on the issues of intent, common scheme or plan, and defendant's

knowledge that he was not supposed to be in the house. The prosecutor noted the presentation of such evidence would be brief. She explained:

> "In that other case in November of 2017 … the defendant was located in … the victim's home on the property. He was … asked again, to leave. The victim indicated … [defendant] had a knife in his hand and [the victim] believed but [he] was unsure whether or not there was possibly a firearm…. [Defendant] is again asked to leave, [and told] that it is not his home. The defendant says that it is. Of course [defendant] did not leave at that point. And then of course victim runs out of the home shortly thereafter and begins to call 911 for assistance…. [G]iven the facts of this case, it is the same victim, very similar conduct which arose."

> "[T]he fact that the defendant was located in the home, was asked to leave because he was not supposed to be there. That he claimed that it was his home which was again almost identical to the circumstances in this case, and the fact that there was, of course, a weapon—a knife involved which the victim specifically tells the officers he definitely remembers that in that prior incident. I think those are all important as, again, it goes to the knowledge that he is aware that he should not have been there. Goes to intent."

The court held the evidence was admissible under section 1101(b) on the issues of knowledge, intent, and identity. It limited the prosecution to calling two witnesses to discuss the prior incident, held the defendant's related arrest should not be mentioned, and, to the extent there was an unconfirmed belief the defendant had a gun during the prior incident, the witnesses were prohibited from discussing that fact.

Dhillon testified regarding the previous incident. He explained he encountered defendant when visiting the house on a previous date approximately three months before the incident giving rise to the charges. In the previous incident, the door to the house was locked so Dhillon knocked. Defendant answered and Dhillon asked him to leave; defendant said it was his house and that Dhillon needed to leave. Dhillon saw a knife in defendant's hand, so he did not go inside; instead, Dhillon left and called the police.

4.

**B.** **Standard of Review and Applicable Law**

Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's disposition to commit such acts. (Evid. Code, § 1101.) Evidence Code section 1101, subdivision (a) states the general rule that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

Section 1101(b), however, authorizes the admission of evidence that "a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).)

"[T]o be admitted, evidence of other crimes must be relevant to some material fact at issue, must have a tendency to prove that fact, and must not contravene other policies limiting admission, such as those contained in Evidence Code section 352." (*People v. Thompson* (1988) 45 Cal.3d 86, 109.) Evidence Code section 352 affords the trial court discretion to exclude such evidence if its probative value is "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

A trial court's rulings under Evidence Code sections 1101 and 352 are reviewed for abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.)

## C.     Analysis

Defendant contends the court erred in admitting evidence of the November 2017 incident, and that the error rendered his trial "fundamentally unfair" in violation of his constitutional due process rights.  He contends such evidence was inadmissible pursuant to section 1101(b) because it did not support an inference he entered the home with the intent to commit a felony.  Additionally, he argues knowledge he was not allowed on the property was not an element of a charged offense; and identity was not a disputed issue or, to the extent it was, the challenged evidence was cumulative of other, less prejudicial evidence of identity.  He further contends, even if such evidence was admissible under section 1101(b), it should have been excluded as more prejudicial than probative pursuant to Evidence Code section 352.  The People respond the prior incident was admissible to establish a common plan or scheme.  They also contend such evidence was relevant to the issues of knowledge and intent because, at the time of the court's ruling, defendant had not revealed his defense strategy and had claimed multiple times the residence at issue was his.  Thus, evidence defendant knew he did not own the property was relevant to undermine such a defense.  They further dispute that the evidence was more prejudicial than probative, and defendant was harmed by its admission.  We find no abuse of discretion and further conclude any alleged error in admitting such evidence was harmless.

"To establish the existence of a common plan or scheme, 'the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual.' " (*People v. Avila* (2006) 38 Cal.4th 491, 586; see also *People v. Ewoldt* (1994) 7 Cal.4th 380, 403 ["[T]he plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense"].)  " '[A] common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of

6.

misconduct against similar victims under similar circumstances.' " (*People v. Walker* (2006) 139 Cal.App.4th 782, 803.)

Here, the prior incident bore sufficient similarities to the charged offense to establish a common plan or scheme.[1] Both incidents involved the same victim who confronted the defendant on the same property, and, each time, defendant responded by brandishing a knife and claiming the property belonged to him before fleeing. Thus, evidence of the prior incident was admissible pursuant to section 1101(b) to establish defendant had a common plan regarding how to respond to a confrontation by Dhillon— claim he was rightfully on the property and threaten Dhillon with a knife before fleeing. Such evidence was relevant to establish a disputed issue at trial: whether defendant had a deadly weapon, namely a knife, during the commission of the charged offense. (See Evid. Code, § 210 [evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].) Defendant's theory of the case was that Dhillon and his realtor lied in their testimony, particularly regarding whether defendant had a knife, in an effort to rid themselves of defendant who was interfering with their ability to rent or sell the property. Evidence of the prior act was thus relevant for the prosecution to establish defendant stayed on the property, was armed with a knife, and, when confronted by Dhillon, defendant denied he was not supposed to be there and used the knife to intimidate Dhillon before fleeing.[2] The court did not abuse its discretion in admitting such evidence under section 1101(b).

---

[1]    As the People note, it is immaterial the court did not explicitly admit evidence of the prior incident as evidence of a common plan or scheme because " 'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11.)

[2]    Additionally, a prior criminal act is admissible under Evidence Code section 1101 to demonstrate that the defendant acted with the requisite criminal intent in committing the charged offense and to " 'negative accident or inadvertence or self-defense or good faith or other innocent mental state[.]' " (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.) Here, defendant was charged with burglary which requires a showing he entered a dwelling with the specific intent to

We also cannot conclude the probative value of such evidence was "substantially outweighed" by the probability that its admission would "necessitate undue consumption of time" or "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury" such that the court should have excluded it pursuant to Evidence Code section 352. (Evid. Code, § 352.) Here, the probative value of this evidence stems from the similarity between the uncharged offense and the incident giving rise to the charged offense—"a similarity which, as noted above, is sufficient to support the inference that defendant acted pursuant to a common design or plan." (*People v. Balcom* (1994) 7 Cal.4th 414, 427.) "The close proximity in time of the uncharged offense[] to the charged offense[] increases the probative value of this evidence." (*Ibid*.) The unduly prejudicial impact of such evidence arises from its tendency to persuade jurors to infer defendant had a propensity to commit crime. But the risk of undue prejudice was reduced by the fact the prior uncharged offense was less inflammatory than the charged offense, decreasing the possibility the jury's passions were inflamed by it. (See *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 825–826; *People v. Whisenhunt* (2008) 44 Cal.4th 174, 205.) Additionally, the court limited the discussion of the prior incident to two witnesses, Dhillon and the responding officer, and their related testimony was brief. On this record, the court did not abuse its discretion in failing to exclude such evidence pursuant to Evidence Code section 352.

Finally, even if the court erred in admitting evidence of the uncharged offense, we cannot conclude defendant was prejudiced. Here, evidence of the assault charge was strong: Dhillon testified defendant swung at him with a knife; an eyewitness, Magana, corroborated Dhillon's version of the events; Dhillon had a cut on his hand after the

commit a felony. During closing, defense counsel argued the evidence only established defendant was on the property and that he believed he had a right to be there. Thus, evidence Dhillon previously confronted defendant and told him to leave the property, during which defendant brandished a knife, was relevant to proving defendant lacked an innocent mental state and believed in good faith he had a right to be on the property.

8.

incident which the prosecution introduced photographs of at trial; and both Dhillon and Magana identified defendant as the perpetrator at trial. Furthermore, defense counsel questioned Dhillon on cross-examination regarding other instances when he found defendant on his property; in response, Dhillon testified he found defendant on the property at least four or five other times and called the police each time. Accordingly, the jury had before it other evidence that Dhillon had previously found defendant on his property. On this record, we cannot conclude there is a reasonable probability the jury would have reached a different verdict absent the admission of evidence of the uncharged incident. (See *People v. Rogers* (2009) 46 Cal.4th 1136, 1165–1166 [admission of Evidence Code section 1101 evidence harmless where witness's testimony concerning uncharged incident was brief, she expressed no fear or negative feelings about incident, and circumstantial and physical evidence pointing to defendant's guilt was overwhelming]; see also *People v. Lopez* (2011) 198 Cal.App.4th 698, 716 ["Nevertheless, the erroneous admission of other crimes evidence is harmless if it does not appear reasonably probable that without the error a result more favorable to the defendant would have been reached"]; see generally *People v. Watson* (1956) 46 Cal.2d 818, 836 ["a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"]; *People v. Marks* (2003) 31 Cal.4th 197, 226–227 ["we have held the application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard of *Watson*"].)

Accordingly, we reject defendant's first contention.

## II. Remand for consideration of Senate Bill No. 1393

Defendant next contends his case should be remanded to permit the court to exercise its newfound discretion and consider whether to strike the prior serious felony

enhancement imposed pursuant to Penal Code section 667, subdivision (a). The People agree remand is necessary on this basis. We agree.

Senate Bill No. 1393, signed into law on September 30, 2018, amends Penal Code sections 667 and 1385 to provide the trial court with discretion to dismiss, in furtherance of justice, five-year enhancements pursuant to Penal Code section 667, subdivision (a)(1) (Stats. 2018, ch. 1013, §§ 1, 2). The new law took effect on January 1, 2019. The law is applicable to those parties, like defendant, whose appeals were not final on the law's effective date. (See *In re Estrada* (1965) 63 Cal.2d 740, 748.)

The California Supreme Court has held, when a court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Here, as the parties note, defendant was sentenced in this case on October 29, 2018, after Senate Bill No. 1393 was passed but before it took effect. At sentencing, the court imposed the five-year Penal Code section 667, subdivision (a) enhancement without further comment. Accordingly, the record does not "clearly indicate" the court would not have struck this enhancement had it been aware of its discretion to do so. Thus, we agree with defendant's second contention and accept the People's concession that remand is required on this basis.

## III. The court did not abuse its discretion in refusing to strike defendant's prior strike

Defendant next argues the court abused its discretion in refusing to strike his prior strike. We disagree.

### A. Relevant Factual Background

The court found defendant had a prior serious felony conviction within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (c)–(j), 1170.12, subds. (a)-

10.

(e)) and Penal Code section 667, subdivision (a).  Before sentencing, defendant moved to strike his prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.  He argued his prior 2008 strike offense was remote in time; his "criminal history ha[d] been relatively less significant for the last decade" during which it "consisted of only misdemeanor crimes involving possession of prohibited items"; the circumstances of the charged offense were "relatively less severe" than other felony assaults with a deadly weapon given the facts presented at trial and the minor injury suffered by the victim that required no medical attention; and defendant already faced a substantial prison sentence for the charged offense without the strike prior.

The People opposed defendant's motion arguing defendant repeatedly entered the victim's home in this case and, on the date of the incident, he "elevated the situation by using a weapon to attack the victim."  Additionally, defendant's prior strike occurred in 2008 and defendant had not lived a crime-free life since then; rather, he had suffered five convictions and had another case pending for brandishing a weapon and trespassing related to the same victim.

The court denied defendant's *Romero* motion based on defendant's "overall record."  The court stated although defendant's criminal conduct had "slow[ed] down recently," the court was not inclined to exercise its discretion to strike the strike given defendant's "past performance on probation and the level of his criminal conduct."

### B.    Standard of Review and Applicable Law

" '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.'  [Citation.]  To achieve this end, 'the Three Strikes law … establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*People v.*

11.

*Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) "[T]he [T]hree [S]trikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Id.* at p. 378.)

A trial court has discretion under Penal Code section 1385 to strike prior felony convictions alleged for sentence enhancement purposes. (*Romero*, *supra*, 13 Cal.4th at pp. 529–530.) In deciding whether to strike a prior felony conviction allegation, the court must "consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We review a trial court's decision to deny a motion to strike prior strike allegations for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 375.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at pp. 376–377.)

12.

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) "Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (*Ibid.*)

"Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the [T]hree [S]trikes scheme must be even more extraordinary." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

### C.    Analysis

Defendant contends the court abused its discretion in refusing to strike his prior strike conviction for participation in a criminal street gang (Pen. Code, § 186.22). He asserts his prior conviction was nonviolent, there was no indication it was "especially aggravated," and it occurred 10 years earlier, when defendant was 22 years old. Additionally, his other prior offenses were mostly for misdemeanors involving the possession of prohibited items such as drugs. He argues his age at the time of the previous strike and his substance abuse problem "mitigate[] in favor of imposing a reduced sentence." He also contends the instant conviction was "mitigated" in light of the victim's minor injury and because there was evidence he had mental health issues and subjectively believed he had a right to eject the victim from the property. He asserts he is

13.

not a "dangerous career criminal" and, thus, falls outside of the spirit of the Three Strikes law which is aimed at incarcerating recidivists, but not at the unnecessary cost of taxpayer dollars. Finally, he contends a "sentence of 11 years in state prison for a mitigated assault is patently absurd and unjust because the [charged] offense did not result in a serious injury and [he] perpetrated the crime based on a subjective belief that he had the right to be on the property, which was largely based on mental illness." The court did not abuse its discretion.

The trial court was entitled to consider, as it did, the particulars of defendant's background, character, and prospects including his lengthy criminal history and his past performance on probation in considering his *Romero* motion. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 161; *People v. McGlothin* (1998) 67 Cal.App.4th 468, 475.) Defendant's criminal history dates back to 2001. In addition to multiple juvenile offenses, defendant was convicted of numerous crimes as an adult including but not limited to assault with a deadly weapon in 2007 and active participation in a criminal street gang in 2008 (the strike offense). After the strike offense, defendant continued to engage in illegal activity. He was convicted of possession of drugs for sale in 2008, and illegal drug possession in 2013 and 2017. He was also convicted of concealed possession of a dirk or dagger in 2015. Defendant was also charged in 2017 with trespassing and brandishing a weapon against the same victim in this case on another occasion. He repeatedly violated supervision in the past. The court could also consider the nature of defendant's charged offense. And here, although the victim's injury was minor, we cannot conclude the charged offense was trivial. The evidence established defendant had been admonished previously to leave the victim's property and to stay away, but he continued to return. Defendant entered the victim's property without permission and then swung at the victim with a deadly weapon when he was confronted.

Accordingly, we cannot conclude this is an extraordinary case where the relevant factors manifestly support the striking of defendant's prior conviction and no reasonable

14.

minds could differ.  (See *Carmony*, *supra*, 33 Cal. 4th at p. 378.)  Rather, the court's conclusion that defendant did not lie outside of the spirit of the Three Strikes law was not so irrational or arbitrary that no reasonable person could agree with it.  (See *People v. Philpot* (2004) 122 Cal. App.4th 893, 907 [no abuse of discretion denying *Romero* motion "given defendant's continuous criminal history, his parole violations, the seriousness of the present and past offenses, his seemingly dim prospects for rehabilitation, and his lack of meaningful crime-free periods"]; *People v. Stone* (1999) 75 Cal.App.4th 707, 717 [no abuse of discretion in refusing to vacate one of defendant's strikes because defendant "is an exemplar of the 'revolving door' career criminal to whom the Three Strikes law is addressed"]; see also *People v. Gaston* (1999) 74 Cal.App.4th 310, 320 [reversing order vacating 17-year-old strike given the defendant's "unrelenting record of recidivism"; "[defendant] is the kind of revolving-door career criminal for whom the Three Strikes law was devised"]; *People v. Thornton* (1999) 73 Cal.App.4th 42, 44–49 [reversing order dismissing two of three strikes, where defendant had long history of felonies, misdemeanors, drug use, and parole violations, which showed his background, character, and prospects were "dismal" and could not "be said to be outside the spirit of the [T]hree [S]trikes law"]; *People v. Barrera* (1999) 70 Cal.App.4th 541, 554–555 [the court's refusal to dismiss one of defendant's two 14-year-old strikes was justified by defendant's "long-standing drug addiction," his criminal history, including 11 different misdemeanors within the seven years leading up to the charged offense, three prior felonies, and numerous probation and parole violations].)  Thus, we find no abuse of discretion.  For the same reasons, we also cannot conclude, as defendant argues, that the imposed sentence was "patently absurd and unjust."  (See *Carmony*, *supra*, 33 Cal.4th at p. 378 [the Three Strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper"].)

We reject defendant's third contention.

**IV.    Defendant is not entitled to remand for an ability to pay hearing**

Finally, defendant argues the court violated his due process rights by imposing a restitution fine and certain fees without holding an ability to pay hearing.  We disagree.

**A.    Relevant Factual Background**

At the sentencing hearing, the trial court ordered defendant to pay a $300 statutory minimum restitution fine pursuant to Penal Code section 1202.4, subdivision (b), and imposed and stayed a parole revocation fine in the same amount pursuant to Penal Code section 1202.45.  The court also imposed victim restitution pursuant to Penal Code section 1202.4, subdivision (f) in an amount to be determined, a $40 court operations assessment pursuant to Penal Code section 1465.8, and a $30 court facilities funding assessment pursuant to Government Code section 70373.  The record does not reflect defendant requested an ability to pay hearing at any time.

**B.    Analysis**

Defendant argues the court violated his due process rights by imposing the $300 restitution fine, the $40 court operations assessment, and the $30 court facilities funding assessment without determining whether he had the ability to pay these amounts.  Defendant's due process argument is based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which was decided after defendant was sentenced and while his current appeal was pending.  *Dueñas* held that "[d]ue process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes" certain fines or fees.  (*Id.* at pp. 1164, 1167; accord, *People v. Castellano* (2019) 33 Cal.App.5th 485, 488–489.)  Relying on *Dueñas*, defendant asserts the fees must be vacated, the $300 restitution fine must be stayed, and the matter must be remanded for the court to determine his ability to pay.  We find defendant's assertions unpersuasive and decline to stay or vacate the imposed fines and fees or to remand on this basis.

In *Dueñas*, the defendant lost her driver's license because she was financially

16.

unable to pay her juvenile citations. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1161.) She continued to reoffend for driving with a suspended license because the aggregating criminal conviction assessments and fines prevented her from recovering her license. (*Ibid.*) The *Dueñas* court described this as "cascading consequences" stemming from "a series of criminal proceedings driven by, and contributing to, [the defendant's] poverty." (*Id*. at pp. 1163–1164.) The *Dueñas* court concluded the defendant faced ongoing unintended punitive consequences because of the imposed financial obligations. (*Id.* at p. 1168.) *Dueñas* determined those unintended consequences were "fundamentally unfair" for an indigent defendant under principles of due process. (*Ibid*.)

To the extent *Dueñas* applies to this case, the People argue defendant forfeited any challenge to his alleged inability to pay the fine and fees because he failed to object at the sentencing hearing. However, defendant did not forfeit review of the issue. Penal Code section 1202.4, subdivisions (c) and (d) only permit a party to raise an ability to pay objection when the court imposes a restitution fine above the statutory minimum. The court imposed the minimum restitution fine of $300 and defendant lacked the statutory authority to object under the governing law at the time of his sentencing hearing. (Cf. *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.) In addition, the statutes that authorize the imposition of the court operations and facilities fees and assessments do not permit a defendant to make any kind of ability to pay objection. (Pen. Code, § 1465.8, subd. (a)(1); Gov. Code, § 70373, subd. (a)(1).)

Nevertheless, we decline to expand *Dueñas*'s holding beyond the unique facts found in that case. Unlike the *Dueñas* defendant, here, defendant does not establish the violation of a fundamental liberty interest. (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1056 (*Lowery*).) His incarceration was not a consequence of prior criminal assessments and fines. He was not deprived of liberty because of his indigency. Accordingly, as we recently explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), we believe an Eighth Amendment analysis, as opposed to a due process analysis,

17.

is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Id*. at pp. 1069–1072; accord, *Lowery*, at pp. 1056–1057 [due process not violated when defendants are not denied access to the courts, not prohibited from presenting a defense, not incarcerated due to an inability to pay prior fees, fines, or assessments, do not face ongoing unintended punitive consequences, or do not suffer a violation of a fundamental liberty interest]; *People v. Son* (2020) 49 Cal.App.5th 565, 599–601 (conc. & dis. opn. of Franson, J.) [no violation of fundamental liberty interest where trial court imposed disputed fees, fines, and assessments without first conducting an ability to pay hearing; case did not present unique concerns addressed in *Dueñas*—defendant was not incarcerated because of his indigency, but for his continuing violent criminal acts while serving a life prison term]; but see *id.* at pp. 577–579 (lead opn. of Smith, J.) [nonpunitive court facilities and court operations assessments may not be imposed on a defendant who is unable to pay because these charges are imposed on court users for use of the court, burdening their exercise of the fundamental right of access to the criminal courts].) Under that standard, we cannot conclude the $300 minimum restitution fine and $70 in assessments imposed in this case are grossly disproportionate to defendant's level of culpability; thus, they are not excessive under the Eighth Amendment. (*Aviles*, at p. 1072; accord, *Lowery*, at p. 1058.)

In any event, even if we agreed with *Dueñas*, we would still reject defendant's constitutional claims and find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt since defendant has the ability to pay the fine and fees imposed in this case. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031, 1035; *Aviles*, *supra*, 39 Cal.App.5th at pp. 1075–1077.)

> " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has

the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody.' " (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fine and fees from probable future wages, including prison wages. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076; *Lowery*, *supra*, 43 Cal.App.5th at pp. 1060–1061; accord *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) The court sentenced defendant to 11 years' imprisonment and there is nothing in the record that shows defendant would be unable to satisfy the fines and fees imposed by the court while serving his prison term. While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Jones*, *supra*, 36 Cal.App.5th at p. 1035 ["Given that the restitution fine is $300 and the assessments are $70, [the defendant] will have sufficient time to earn these amounts during his sentence, even assuming [he] earns nothing more than the minimum"]; see also *People v. Lewis* (2009) 46 Cal.4th 1255, 1321 [concluding large restitution fine which would be deducted from portion of any funds given to defendant by his family was not inappropriate]; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505 [court did not abuse its discretion in imposing maximum fine though it may be difficult for defendant to pay it].)

We thus conclude, based on the record before us, that defendant has the ability to pay the statutory minimum restitution fine and the mandatory assessments he was ordered to pay. He is not entitled to remand for a hearing on the subject.

## V.    Correction of abstract of judgment

The abstract of judgment reflects that defendant was convicted by plea. However, a jury convicted defendant of count 1. Additionally, he was sentenced to prison pursuant

19.

to Penal Code section 1170.12, subdivisions (a) through (e) due to his prior serious or violent felony conviction pursuant to Penal Code section 667, subdivisions (c) through (j), but the abstract of judgment does not reflect this. Though the parties do not discuss these clerical errors, it is within our power to correct them. (See *People v. Jones* (2012) 54 Cal.4th 1, 89.) Accordingly, the abstract of judgment should be amended to reflect these changes.

## DISPOSITION

We remand to the trial court for a new sentencing hearing to permit the trial court to exercise its discretion regarding whether to strike the prior serious felony enhancement imposed pursuant to Penal Code section 667, subdivision (a)(1), in light of Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1013, § 1, eff. Jan. 1, 2019).

The trial court is ordered to prepare an amended abstract of judgment reflecting that defendant was convicted by a jury and he was sentenced to prison pursuant to Penal Code section 1170.12, subdivisions (a) through (e) due to his prior serious or violent felony conviction pursuant to Penal Code section 667, subdivisions (c) through (j), and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

In all other respects, the judgment is affirmed.


HILL, P.J.

WE CONCUR:


DETJEN, J.


FRANSON, J.

20.